# Smith v. Markland, Appellant.

223    605
f224   ¹459

*Deed—Forgery—Acknowledgment—Notary public—Impersonation of grantor.*

1. Where a deed is a forgery, and the forger produces before a notary public a person other than the grantor to make a fraudulent acknowledgment of the deed, the certificate of the notary public is not conclusive against the owner in favor of a bona fide purchaser for value who has relied upon the acknowledgment and the record.

2. Reliance on a forged deed, recorded on an absolutely false certificate of acknowledgment may bring loss upon him who so relies, but neither such deed nor such certificate appended to it can ever affect the owner of the property.

Argued March 24, 1908. Appeal, No. 36, Jan. T., 1908, by defendants, from decree of C. P. No. 3, Phila. Co., Sept. T., 1904, No. 1,394, on bill in equity in case of Fannie M. Smith, executrix of the will of Uselma C. Smith, and in her own right, Robert M. Smith et al. v. Mary Markland and the West End Trust Company, trustee under the will of John Atkinson, deceased, Charles A. McCaulley et al. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity to cancel a deed.

McMICHAEL, P. J., found the facts to be as follows:

1. The case was heard by me upon final hearing upon bill, answers and proofs. The plaintiffs were Fanny M. Smith, the widow of Uselma C. Smith, who died March 2, 1902, and four adult children of Uselma C. Smith. The defendants were Dr. Charles A. McCaulley, J. C. Chevalier and I. J. McGeogh, the West End Trust Company, Mary Markland and Edwin M. Skinner.

2. The proceeding was for the purpose of having delivered up and canceled that which purported to be a deed of conveyance of premises 1515 Green street from Fanny M. Smith, executrix and in her own right, to Mary Markland, and for the purpose also of having delivered up and canceled a mortgage of $5,000 executed by Mary Markland to the West End Trust Company, trustee, and also to have delivered up and canceled a deed from Mary Markland to Charles A. McCaulley, and for the further purpose of staying writ of fi. fa. that was issued out of C. P. 3 of September Term, 1904, No. 1,394, upon the judgment of Chevalier and McGeogh against Mary Markland, and to restrain them from proceeding to collect their judgment from the premises 1515 Green street, and to place the complainants in the same position as they were before the execution of the said instruments.

3. The defendants, Dr. McCaulley, Chevalier, McGeogh and

the West End Trust Company, were innocent of any participation of fraud hereinafter described. Mary Markland, who is the aunt of Edwin M. Skinner, and Edwin M. Skinner were participants in the fraud. Mary Markland was the passive agent through whom the defendant Skinner carried through his covinous transaction. Edwin M. Skinner was guilty of willful and deliberate fraud and forgery.

4. Uselma C. Smith died May 2, 1902. By his will the title to premises 1515 Green street was vested in the widow and children of Uselma C. Smith, and, in June, 1904, the house was in the possession of Mrs. Smith and her children and they occupied it as a family residence.

5. On June 4, 1904, Edwin M. Skinner came to Mrs. Smith and told her that parties in New York named Marcuse desired to buy the residence 1515 Green street; that they were willing to give $10,000 for it, and that they did not desire possession until the fall. On June 6, Skinner came with papers which he told her were for the purpose of showing the purchasers that there was nothing against the property and that she had power to sell. She signed the papers without reading them, and her daughter signed them as a witness. Mrs. Smith said that she thought she only signed one paper, but her signature being shown her on two pages of the alleged deed, she said it looked like her signature, but that if she signed more than one paper there must have been some trick practiced upon her by that man (Skinner). Her daughter, Charlotte F. Smith, also testified to the statements by Skinner, but she said that there were two papers.

6. I find as a fact, that Mrs. Smith signed two papers or sheets of paper, but I also find as a fact that her signatures were procured from her by fraud and that she did not intend at the time when she signed them, or at any other time, that they should form part of a deed of conveyance of the premises 1515 Green street. There were no seals upon the papers when Fanny M. Smith and Charlotte Smith signed the papers, and I find as a fact that the seals were placed upon the papers subsequently.

7. I also find as a fact from the evidence before me, that no

delivery of the alleged deed purporting to convey the premises 1515 Green street was ever made or intended to be made by Fanny M. Smith as executrix or in her own right. I have come to this conclusion after weighing the testimony of the witnesses who were examined before me against the presumptions as to delivery arising from the acknowledgment and recording.

8. After Edwin M. Skinner had procured by fraud the signature or signatures of Fanny M. Smith, executrix, and in her own right to the warranty clause and to the receipt, he attached these two sheets to other sheets of paper which had been drafted for him. Then he procured someone to personate Mrs. Smith before a notary public, and in that way procured the notarial certificate that Fanny M. Smith had acknowledged the deed as hers.

9. Skinner had the alleged deed from Fanny M. Smith, executrix, to Mary Markland recorded on June 7, 1904.

10. On June 6, Skinner made an application to the West End Trust Company for a loan of $6,000 on the premises 1515 Green street, and the West End Trust Company loaned $5,000 upon mortgage by Mary Markland.

11. The steps by which Skinner carried out the fraudulent scheme were ingenious and he deceived a number of persons. I do not think it necessary to state all the facts, but only those necessary for the determination of the case. Settlement for the mortgage was made on June 13, and $5,000 was handed over in cash by the West End Trust Company to Skinner, upon the order of Mary Markland.

12. The money was paid on June 13 by the West End Trust Company, but the clerk who had charge of the settlement certificate requested that Skinner should get from Mrs. Smith a declaration that there were no purchase money mortgages, and this Skinner promised to bring to the company, and subsequently he did furnish to the company on June 20, 1904, a writing which he dictated to Mrs. Smith as follows: "Philadelphia, June 20, 1904. West End Trust Company, Gentlemen: I hereby declare that no purchase money mortgages were given or created by the purchaser of 1515 Green street either in the form of a judgment note, bond or mortgage or in any form

whatsoever. Fanny M. Smith, Extx. Fanny M. Smith. Witness: Edwin M. Skinner."

13. On October 14, 1904, Mary Markland signed, acknowledged and delivered to Charles A. McCaulley what purported to be a deed of conveyance of premises 1515 Green street, in the city of Philadelphia, under and subject to a mortgage of $5,000. The circumstances surrounding this alleged conveyance were briefly as follows:

Dr. McCaulley instituted criminal proceedings against Skinner, who was charged before a magistrate with larceny as bailee, a return was made and a bill or bills were found by the grand jury charging Skinner with obtaining money under false pretenses. The alleged conveyance was made by Mary Markland at the request of Skinner to keep Skinner out of trouble, and to give him his freedom. Dr. McCaulley released Skinner of all civil liability. I have declined to find, as requested in the second request for findings of fact on behalf of the defendant McCaulley, that the deed from Mary Markland to Charles A. McCaulley was a conveyance of the premises 1515 Green street. And I have further declined to find, as requested by the third request for findings, that the said Charles A. McCaulley had no knowledge, notice or means of knowing of any alleged right, title or interest, legal or equitable, of the said Fanny M. Smith or of any parties represented by her, or, in or to the said premises 1515 Green street. There is no evidence to show that Charles A. McCaulley had knowledge or actual notice of any alleged right of Fanny M. Smith, but she was still in the possession of the premises 1515 Green street, when the alleged conveyance was made to him by Mary Markland, and the facts and circumstances surrounding Skinner's transactions with him ought to have put McCaulley on his guard. An inquiry of Fanny M. Smith would doubtless have developed the true state of the case.

14. On August 11, I. J. McGeogh, acting, as he testified, as agent for his mother, made a loan to Mary Markland, nominally of $500. Edwin M. Skinner received $400 of this money and $100 was retained by Mr. McGeogh as a commission. Subsequently, the loan to Mary Markland was increased on its face

to $1,000, and a judgment note was given to J. C. Chevalier and I. J. McGeogh for $1,000, signed by Mary Markland and witnessed by Edwin M. Skinner. Five hundred dollars of this $1,000 was in renewal of the $500 which was nominally the first loan, and $300 in cash was apparently loaned to Mary Markland, although Skinner got $300 and $200 was divided between McGough and Chevalier. The $300 given to Skinner was loaned, by Chevalier to McGeogh and repaid to McGeogh by Chevalier, as appears by the testimony. The money was loaned on the record title of Mary Markland to the premises 1515 Green street, subject to a mortgage to the West End Trust Company. The lender relied for his security upon the record title, but made no particular inquiry of Fanny M. Smith, who was still in possession, or of anyone else as to the reason why Fanny M. Smith and her children still remained in possession of 1515 Green street when they appeared to have conveyed their title to Mary Markland.

15. On or about July 1, Mrs. Smith, who was about to leave the city for a summer vacation, saw her attorney, Mr. Mellors, and told him what Skinner had said about parties in New York desiring to buy 1515 Green street, and left the matter in Mr. Mellors' hands. Mr. Mellors sent for Skinner, who told him the same story he had told Mrs. Smith. Mr. Mellors told Skinner that he thought the agreement for the sale ought to be in writing, but Skinner stated that it was not necessary, because he was a friend of the Smith family. Mr. Mellors then urged that Skinner should make some payment to bind the bargain, and after some urging, Skinner paid $100 to Mr. Mellors and afterwards, in August, $400 more. No knowledge, however, of the alleged deed from Fanny M. Smith to Mary Markland, or of the mortgage by Mary Markland to the West End Trust Company, or of the alleged conveyance from Mary Markland to Dr. McCaulley, was brought to the attention of Mr. Mellors until Mrs. Smith received a notice to pay rent about January, 1905. Mr. Mellors still holds the $500 paid by Skinner.

16. Skinner is now, and has been since the latter part of 1904, a fugitive from justice.

17. I find as a fact that the alleged deed from Fanny M. Smith, executrix, was a forged deed.

In this case several interesting questions have arisen and I shall dispose of them in the order of their importance.

1. Was the alleged deed from Fanny M. Smith, executrix, etc., to Mary Markland a forged deed? After a careful consideration of the matter I have reached the conclusion that it was. Forgery has been defined to be "the alteration of a written instrument to the prejudice of another's right." Fanny M. Smith signed two sheets of paper which are now parts of the alleged deed without any knowledge that they were to be used as parts of a deed and without any intention that they should be so used. Seals were subsequently added and other sheets of paper were prefixed to them; this was an alteration of the writing or written instrument signed by Fanny M. Smith and to the prejudice of her right. If the case were being tried before a jury who were to determine the question of fact, evidence as to the willful and deliberate fraud of Skinner, the apparent erasures in the writings and the chain of testimony showing how the fraud was perpetrated would be submitted to the jury. But as the chancellor is to determine the questions of fact himself, I have come to the conclusion that the elements of forgery exist and that it was a forged deed. In 4 Pepper & Lewis' Digest of Decisions, col. 5529, is found the following:

"Forgery includes the fraudulent making or alteration of any writing to the prejudice of another's rights. To complete the offense there must be an actual making, the alteration by the defendant and a fraudulent intent, the existence of which is a question for the jury."

In Flitcraft v. Commonwealth Title Insurance & Trust Co., 211 Pa. 114, which was a case that went up from court of common pleas No. 2, and was affirmed by the Supreme Court, it was held that the alteration of the deed in that case was a forgery and the deed was thereby avoided and could not thereafter be used in any way whatsoever to the prejudice of the complainant, the court saying: "That the alteration was fraudulent in design is proven beyond a doubt; that it is material in effect is equally clear. The removal of the word 'Trustee' destroyed the

identity of the instrument and altered its legal import, changed the relationship of the parties and varied the mode of proof concerning their rights, and opened the way to fraud and resulted in actual damage." Applying the law to the facts I have come to the conclusion that the deed from Fanny M. Smith to Mary Markland was a forged deed.

2. But even if the fraud perpetrated was not technically a forgery, had the alleged deed from Fanny M. Smith to Mary Markland any validity? There was no delivery.

In Critchfield v. Critchfield, 24 Pa. 100, it was held, first, that delivery of a deed is essential to its validity, and is a question for the jury to determine; second, a presumption arises from the recording of a deed and its possession by the grantee that it has been duly delivered; but it may be rebutted by proof that the grantor took away the deed immediately after its execution, and kept it in his own possession during his life. In the present case I think the question whether there was or was not a delivery of the deed is a question of fact. Whatever presumptions may have arisen from the acknowledgment and recording of the deed were rebutted by positive testimony. In the case of Dayton v. Newman, 19 Pa. 194, Mr. Justice WOODWARD, delivering the opinion of the court, said: "Delivery may be made by words alone, or by acts alone, or by both together, but there must be sufficient to show an intention to pass the title. Delivery is a question for a jury, and where doubt is thrown upon it by such evidence as was offered here, the court has no more right to assume it as true, and exclude all testimony to combat it, than they have to assume any other fact in the cause, and refuse to hear it questioned." In the case of Duraind's App., 116 Pa. 93, which was an appeal from court of common pleas No. 2 of Philadelphia county, Hon. D. Newlin FELL delivered the opinion of the court below and his opinion was affirmed in a per curiam opinion by the Supreme Court. In that case the court said: "A delivery is essentially necessary to give effect to a deed. The signing and sealing thereof are insufficient to bind the grantor, or to pass title to the vendee therein named. In the present case, no question of presumptive or conditional delivery, either to the vendee or to any person for her arises.

It is conclusively shown that, although the deed was signed and acknowledged, yet in fact it remained in the possession of the person who signed it until her death. Neither the grantee named, nor the persons for whose benefit it professed to be made, gave any consideration therefor, nor were any of them present when it was signed or acknowledged, and they had no knowledge of its existence during the life of the maker. In law it was not a deed." In the case of Benedick v. Benedick, 187 Pa. 351, in which the opinion of the Supreme Court was delivered by Mr. Chief Justice STERRETT, it was held, inter alia, "That the delivery of a deed is essential to its validity is a proposition too plain to acquire citation of authority."

3. Was there sufficient evidence to set aside this deed? I am of opinion, however, that the evidence was both competent and relevant, and not only sufficient to justify a jury in coming to the same conclusion at which I have arrived, but that it was clear, satisfactory and convincing.

Upon the trial of an issue involving questions of fraud, great liberality should be allowed in the admission of evidence. Every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with the fraud shall be competent evidence: Glessner v. Patterson, 164 Pa. 224. In that case Mr. Justice FELL, delivering the opinion of the court, said: "The rule that great latitude should be given in investigating questions of fraud is elementary. . . . The meaning of the maxim that great liberality of evidence is to be allowed in the trial of questions of fraud is that every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with the fraud, shall be competent evidence, if in the opinion of the judicial mind it bears such a relation to the transaction under investigation as in its nature is calculated to persuade the jury that the allegation of fraud is or is not well founded."

4. It has been urged on behalf of the West End Trust Company, which advanced $5,000 on a mortgage given by Mary Markland, and by Chevalier and McGeogh, who relied upon the record title of Mary Markland, and by Charles A. McCaulley, who received from Mary Markland that which purported to be

a conveyance of a property at 1515 Green street, first, that Mary Markland had a valid title of record and that said company was entitled to rely upon said record title.

My answer is that the defendants were entitled to rely upon the record as far as it went, but the fact that the record showed an apparent title in Mary Markland would not prevail or make valid a title which was void because the inception of the title was a forged deed or a deed which had never been delivered. It seems to me unnecessery to cite many authorities upon these points. The cases are very numerous. The law is well summed up in Reineman v. Moon, 12 Pittsburg L. J. (N. S.) 167: "No man can be deprived of his property by a forged deed or mortgage, no matter what may be the bona fides of the party who claims under it." This was a sci. fa. on a mortgage duly acknowledged before a magistrate.

The Supreme Court of this state in the case of Van Amringe v. Morton, 4 Whart. 361, said: "If a deed which has been executed and acknowledged by the grantor, with a blank for the grantee's name, be surreptitiously and fraudulently taken from the grantor's house, and the blank filled up, no title passes thereby, and a bona fide purchaser, for a valuable consideration from the person holding the deed, stands in no better situation than such fraudulent holder, especially if the original grantor remain in possession of the property." In this case the deed was properly executed and acknowledged and the sole question was delivery.

The case of Wallace v. Harmstad was before the Supreme Court of this state on three different occasions. First, in the case of Arrison v. Harmstad, 2 Pa. 191; second, in the case of Wallace v. Harmstad, 15 Pa. 462, and lastly, in Wallace v. Harmstad, 44 Pa. 492. And in the case of Wallace v. Harmstad, 15 Pa. 462, it was held: "A ground rent deed fraudulently altered by the grantor after execution and delivery is thereby rendered utterly void as it respects the covenants in favor of the grantor." Chief Justice GIBSON, in deciding this case, said, inter alia: "The doctrine of deeds stands on the principles of the common law: the doctrine of commercial instruments stands on the principles of the law merchant. A

deed is a solemn and a formal act: a commercial instrument is neither solemn nor formal. A deed is not intended for circulation or to be subject to alteration by the exigencies of trade; but a promissory note or a bill of exchange may induce new responsibilities while it flits from hand to hand as if it were a part of the general currency. It is not strange, therefore, that a commercial and a common-law security should have different consequences in respect of responsibilities to third persons. A fraudulent alteration of either avoids it between the original parties; but the necessities of trade require that a bona fide holder of a bill or a note be not involved in the consequences of their dealings. On the other hand, the assignee of a bond, whether legal or equitable, takes it subject to defalcation and the equities of the obligor. A decision in the case of a commercial instrument, therefore, cannot be a precedent for a case like the present. The fraudulent alteration of a deed makes every part of it a forgery; and it is so laid in the indictment. In Rex v. Teague, 1 Eng. Cro. Ca., 35, and in Dawson's Case, 2 East P. C. 979; s. c. 3 Chitty Crim. 1, 1042, it was held that a forgery of a material part is a forgery of the whole, because the legal effect of the whole would be changed; and it would seem to be as absurd to claim through the forgery of a deed not locked up in the party's desk, as to claim through the theft of a horse not locked up in the owner's stable. There is no case or book in which a deed fraudulently altered has been treated as only voidable. The authorities collected in Shepherd's Touchstone, at page 68, prove that it is utterly void."

In the case of Reck v. Clapp, 98 Pa. 581, Mr. Justice GREEN, delivering the opinion of the court, said (p. 585): "The second point of the plaintiff's was answered by the court below by their saying, in effect, that the defendant would not be affected by the forgery, because he could assert the rights of an innocent purchaser without notice if he used reasonable diligence to obtain access to the original papers, but without success, and the title, as recorded, was fair and free from blemish. The consequences of such a doctrine would be of a most serious character if it received the sanction of the courts. For then it would only be necessary for the forger of a deed or mortgage, after having

it placed on record, to lose or destroy the original instrument and convey his title to a innocent third person for value, pretending to him that the original paper was mislaid and would be subsequently delivered. Of course, a purchaser who examines the records is protected by them as far as they can protect him, but he necessarily takes the risk of having the actual state of the title correspond with that which appears of record. The language of this court in the case of Arrison v. Harmstad, 2 Barr, 191, fully illustrates this subject: 'A deed, good in its creation, may become void by matter ex post facto, as by interlineation, erasure, or by alteration in a material part. But a deed may be good in part and void in part. It may be good against one person and void against another.' . . . 'It is said that Mrs. Lewis is a bona fide purchaser without notice, and that the action may be sustained on that ground. But by conceding that she is, her situation is no better than the fraudulent grantor's. Although the title of the grantor was, in its inception, good, it became entirely void by matter ex post facto. At the time of the assignment, the title being avoided, the assignor had nothing to convey; of course nothing passed to the assignee. It may be, and perhaps is, a hard case. Fraud may be committed on an innocent purchaser, who may find it difficult to guard against imposition. This is conceded; but it is far better to encounter this risk than to give the least countenance to any alteration whatever of a solemn instrument of writing, which would certainly be the result, if the guilty party could escape the consequences of his fraud by a transfer to a person who might assume the garb of an innocent purchaser for a valuable consideration. We cannot lay too many restraints upon trick, artifice and fraud.' In Van Amringe v. Morton, 4 Whart. 382, it was held that if a deed which has been executed and acknowledged by the grantor with a blank for grantee's name, be surreptitiously and fraudulently taken from the grantor's house, and the blank filled up, no title passes thereby; and a bona fide purchaser for a valuable consideration from the person holding the deed stands in no better situation than such fraudulent holder. In the case of Wallace v. Harmstad, 8 Wright, on p. 494, WOODWARD, J., speaking of the cases of Arrison v. Harmstad, 2 Barr,

191, and Wallace v. Harmstad, 3 Harr. 462, said: 'The stern ruling in those cases was applied without hesitation to a bona fide purchaser of the ground rent without notice of the fraud, so that, as far as concerns Arrison and all persons claiming under him, the part of the deed which was intended to inure to his benefit may indeed be said to be dead. It was not merely a voidable instrument, it was void. It was called a forgery and treated as such, and neither law nor equity would tolerate it even in the hands of an innocent purchaser.' "

5. It is contended that the certificate of acknowledgment of the notary public to the deed from Fanny M. Smith to Mary Markland was a judicial act and conclusive as to the defendant acting upon the same in good faith, of the facts certified. The question of how far reliance is to be placed upon a notarial certificate is one of difficulty and not free from doubt. In the earliest case, which was the case of Michener v. Cavender, 38 Pa. 334, it was held that where in the mortgage of a married woman's separate estate, the alderman falsely or by mistake, certified to the separate examination and acknowledgment of the wife (who did not sign the mortgage nor appear before him), the mortgagee will be affected by the fraud, though he was not present at the acknowledgment, nor informed of what passed. He will not be presumed a bona fide purchaser, nor is it necessary to prove notice to him of the fraud or mistake. Later cases seem to establish the doctrine that in a suit between the parties parol evidence is permissible to prove fraud or duress, but that where a purchaser, bona fide, without notice, is a party, the certificate is conclusive. The cases cited and which have been examined by me are Barnet v. Barnet, 15 S. & R. 73; Heeter v. Glasgow, 79 Pa. 83; Williams v. Baker, 71 Pa. 476; Singer Mfg. Co. v. Rook, 84 Pa. 442; Miller v. Wentworth, 82 Pa. 285; Penna. Trust Co. v. Kline, 192 Pa. 1. But none of these cases go so far as I am requested to go by the defendants here. They were all cases of acknowledgment by married women, and the judicial certificate of the notary was held to be evidence of the facts therein stated, except in Williams v. Baker, 71 Pa. 476. But they do not carry the doctrine to the length I am asked to go in the present case—that a certificate by a notary,

that Mrs. Fanny M. Smith was present and acknowledged an instrument to be her act and deed, is conclusive, when in truth and in fact she had never so appeared. But however broad and interesting the question may be, I do not think it necessary to the decision of the present case. The rule seems to be that where there is criminal fraud or forgery the certificate of the notary or magistrate may be contradicted. To that effect is the case of Schrader v. Decker, 9 Pa. 14.

In Singer Mfg. Co. v. Rook, 84 Pa. 442, Mr. Justice GORDON, delivering the opinion of the Supreme Court, said: "When a married woman joins her husband in a deed or mortgage to convey or incumber her separate estate, as to the bona fide vendee or mortgagee, for value, without notice of fraud or imposition in the procurement of the execution of such instrument, the certificate of the magistrate, who takes the acknowledgment, is conclusive of every material fact expressed therein. This certificate of the officer is a judicial act and cannot be impeached except for fraud. As to him who has notice, or who has parted with no valuable consideration, the wife may avoid the instrument by showing that she was entrapped into the execution of it by craft or treachery, or compelled thereto by force." The cases, however, in which the purchaser for value without notice is protected are those in which the fraud or duress was upon the wife in regard to her separate acknowledgment and did not amount to a crime or offense against the commonwealth.

Where gross fraud or imposition has been practiced upon the magistrate or notary, I do not know of any case which holds that the fraud or forgery cannot be inquired into. The doctrine that a bona fide purchaser for value without notice shall be protected by a judicial certificate surely cannot be held to cover a case where the certificate itself was obtained by gross fraud or imposition upon the judicial officer who made the certificate. The judgment of a court of record having jurisdiction of the parties and of the subject-matter is conclusive as to the parties, but could it be held that such a judgment obtained by gross imposition on the court itself could not be inquired into by the defrauded party who never was within the jurisdiction of the court? The certificate of acknowledgment of a notary public

is entitled to weight, but it may be overcome by testimony of gross fraud and crime such as was practiced in the present case. However interesting the question may be,—"How far can a judicial certificate be relied upon?"—the question is academic in the present case, because a certificate of a notary can be inquired into and contradicted either (1) where there has been a forgery, or (2) where there has been no delivery of a deed.

6. The defendants contend that Fanny M. Smith, whether as executrix or individually, is estopped as to the defendant, the West End Trust Company (and as to the others also), from denying that her deed to Mary Markland was a valid deed for conveyance to Mary Markland in fee the premises 1515 Green street, and also from denying that the mortgage of $5,000 from Mary Markland to the West End Trust Company is a valid lien upon the mortgaged premises. And it is contended that it does not matter whether the deed was forged or not delivered, that the effect of the estoppel is to forbid Mrs. Smith from setting up any of these facts.

The facts relied upon to create an estoppel are: (1) The signature of at least the warranty sheet of the deed, which was meaningless unless the rest of the deed was to be attached; (2) the signature to the receipt clause of the deed; (3) the delivery of these papers and of·the two perpetual policies to the man who committed the fraud and the signature of an assignment in blank on one of them; (4) the intentional absenting of herself from the premises in order that Skinner might bring with him a man for the purpose of examination; (5) the writing of a declaration as to purchase money mortgages addressed to the party which claims the benefit of the estoppel; (6) the delivery of this declaration to it by Skinner in accordance with his promise; (7) the receipt with knowledge of payments on account of purchase money from Skinner.

I have already discussed the signatures to the warranty sheet and the receipt clause of the deed and the willful and deliberate fraud by which Skinner obtained possession of these two papers. The delivery of the perpetual policies to Skinner was obtained by him by fraud also. The assignment in blank on one of the policies would have protected the insurance company if it had

paid the return premiums to an assignee without notice of the fraud, but cannot be availed of by the defendants. The absence of Mrs. Smith from the premises did not in any way affect the defendants, because it was only for a few hours, nor does the testimony show that they were misled into the belief that she had parted with possession by any falsehood or silence of hers. The declaration as to purchase money mortgages I have already discussed, and the delivery thereof by Skinner to the company. As to the "Receipt with knowledge of payments on account of purchase money from Skinner," this is not in accordance with the facts. The money was paid to Mr. Mellors to bind the bargain, as he said, and is still in his possession, but was never received by him on account of the purchase money of the property, nor did Mrs. Smith ever receive any of it from him for any purpose. Except in the matter of the declaration by Mrs. Smith that there were no purchase money mortgages, neither the West End Trust Company, nor any of the other defendants was a party or privy, and in the case of that declaration the West End Trust Company had parted with its money before it received Mrs. Smith's letter.

The doctrine of estoppel is that where one has willfully, by his acts or by his silence, induced another to act, he is precluded from showing the truth. But the other party must have acted upon the faith of his silence or of that which was said, and must have acted before the acts which would have given rise to the estoppel. Thus in the case of Sensinger v. Boyer, 153 Pa. 628, Mr. Justice WILLIAMS, delivering the opinion of the Supreme Court, says: "There is no doubt about the general principle on which the doctrine of estoppel rests. Having induced action by another on a belief in a given state of facts, it is unjust to permit him who induced the action to deny the facts and strip the action of the protection which they would have afforded. But one who has not been misled cannot invoke this doctrine in his behalf. The rule is stated in McKnight v. Bell, 135 Pa. 358. If the party who seeks protection by setting up an estoppel has not been misled he is not entitled to the benefit of the doctrine. The rule is that one shall be estopped from alleging the truth, only when his falsehood or his silence has

induced action by the other party that would lead to loss except for the estoppel." In Logan v. Gardner, 136 Pa. 588, the opinion being by Mr. Chief Justice MITCHELL, while it was said that, "The doctrine of estoppel in pais has been very much expanded in modern times, particularly in Pennsylvania," the Chief Justice goes on to say: "These decisions [after citing several] rest on the ground that the circumstances were such as to raise a duty to speak, and that failure to do so is either a fraud or would work such injury as would be equivalent to a fraud if the party should not be estopped." Examining the facts on which the claim of estoppel is based, I do not see how any reliance as to estoppel can be placed upon the signing of the deeds and the silence of Mrs. Smith in regard to them, because she was fraudulently misled as to their character. No inquiry was made of her and she was not silent where a duty rested upon her to speak. And as to the declaration that there were no purchase money mortgages, etc., the West End Trust Company cannot avail itself of that because it was given after the company had parted with its money, and it is expressly held in a line of cases in Pennsylvania that this cannot operate as an estoppel: Weaver v. Lynch, 25 Pa. 449; Patton v. Borough, 40 Pa. 206; Reel v. Elder, 62 Pa. 308; Sensinger v. Boyer, 153 Pa. 628; and the other defendants did not in any way rely on this declaration.

Nor are the defendants McCaulley, Chevalier and McGeogh in any better position, for there is no evidence that they relied upon any silence or statements made to them by Mrs. Smith.

I have already found, as a question of fact, that Mrs. Smith has always been and is now in possession of the premises 1515 Green street, and I think that this was a fact sufficient to put those who loaned money upon the strength of Mary Markland's record title upon notice. See McCulloch v. Cowher, 5 Watts & Sergeant, 427. See particularly opinion of WOODWARD, J. (common pleas, Center county), at bottom of page 429, adopted by Supreme Court in per curiam, p. 432. In the case of Patton v. Borough of Hollidaysburg, 40 Pa. 206, it was held that the corporation defendant was not estopped as against the plaintiff from showing an earlier inceptive title than the deed, for the plaintiff had undisputed notice of possession in the borough

from the time it was taken; therefore he was not misled by the deed, and hence is not in the position to claim the exclusion of the truth, which is the effect of an estoppel, lest it might injure him. As to estoppel against forgery, the decision in the case of Bank v. Wentzel, 151 Pa. 142, in which the opinion of the Supreme Court was delivered by Mr. Justice STERRETT, is interesting and instructive. There it was held that a statement by Wentzel, after examination thereof, that a certain promissory note was not a forgery did not amount to an estoppel to prevent him from setting up the forgery as a defense to the note.

To sum up, I find that the deed from Fanny M. Smith, executrix and in her own right, to Mary Markland, was a forged deed, and that it should be delivered up and canceled; that the mortgage by Mary Markland to the West End Trust Company should be delivered up and canceled; that the alleged deed of conveyance from Mary Markland to Charles A. Mc-Caulley should be delivered up and canceled; and that the judgment in favor of J. C. Chevalier and I. J. McGeogh has no validity or lien against the premises 1515 Green street.

I direct notice to be given by the prothonotary to counsel for the various parties who appeared before me, that unless exceptions are filed within ten days from the date of the filing of the findings and opinion of the court, a decree will be entered in accordance therewith. Counsel for complainants to prepare and submit such a decree.

The court dismissed exceptions to the adjudication, McMICHAEL, P. J., filing the following opinion:

Counsel for the defendant, the West End Trust Company, urges four circumstances in support of the exceptions to the findings of the chancellor in this case to sustain his contention that even though the deed in question might have been a forgery the plaintiff was estopped from entering the defense of forgery or non-delivery of the deed as against the West End Trust Company. The grounds of estoppel set up were the conduct of the plaintiff, Fanny M. Smith; first, in having placed her signature upon the papers which were afterwards incorporated into the piece deed; second, in having signed a fire insurance

policy on the house in question in blank; third, in having allowed the representative of the trust company under the guidance of Mr. Skinner to examine the property in question when she was not present; fourth, in having signed a paper as to no purchase money obligations.

At the argument on these exceptions counsel practically agreed that the paper purporting to be the deed was a forgery, and further that the doctrine of ratification could not apply to make this forgery a good deed, but that the equitable principle of estoppel applied to prevent the plaintiff from setting up forgery or non-delivery under the rule that if one of two innocent parties must suffer the one most at fault in causing the loss will be obliged to bear the burden. We do not conceive it necessary for the purpose of deciding this case to pass upon the question as to whether or not the equitable doctrine relied upon by the trust company can prevail in the case of a forged deed. As to personal property the rule is that an owner cannot be divested of his property without his consent, unless he has placed it in the custody of another and given him the apparent right to dispose of it. Should the principle of this rule be held to apply to real estate we do not feel that the facts in this case would be sufficient to estop the plaintiff from setting up her title as against the alleged title of the trust company. As to the execution of the blank pages by the plaintiff a careful reading of these pages will make it apparent to anyone that to a lay mind the paper as signed could well have appeared and been intended as nothing more nor less than a document to be shown to a prospective purchaser to certify that the person signing the same had a good title to the real estate in question and would so warrant. This paper was unsealed and not acknowledged at the time of signing, and the receipt which appears on this paper does not mention any sum and uses the words "indenture" and "consideration," words which might well fail to convey their real meaning to the lay mind. Further, the name of no one appears in these papers excepting that of the said plaintiff herself, the other party simply being called "the grantee." We can well believe that the said plaintiff placed her signatures to these papers without realizing their real purport or the purpose for

which they might be used. We do not feel that a person sign-
ing papers such as these would naturally have anticipated the
possibility that they would subsequently be attached to other
pages containing a description of her real estate, the whole
completing a deed conveying her real estate, so as to estop her
from setting up the contrary as against others who might be
deceived to their loss. The evidence in this case shows that
when this paper, consisting of two pages, was executed by the
plaintiff, she was informed and believed that she was merely
executing a paper to be shown to a prospective purchaser, one
Marcuse, of New York. A view of the forged deed itself with
these two pages incorporated shows erasures and the words
"for herself and her heirs," "and her heirs" and "and her
heirs" written over these erasures immediately after the word
"Smith" wherever it occurs. The two pages signed by her
after being incorporated in the forged deed read as follows:
"And the said Fanny M. Smith, for herself and her heirs does
by these presents, covenant, grant and agree, to and with the
said grantee, her heirs and assigns, that she the said Fanny M.
Smith, and her heirs all and singular the hereditaments and
premises herein above described and granted, or mentioned
and intended so to be, with the appurtenances, unto the said
grantee, her heirs and assigns, against her the said Fanny
M. Smith, and her heirs and against all and every. . . .
Person or Persons whomsoever lawfully claiming or to claim
the same or any part thereof, by, from, or under her, them, or
any of them, . . . . shall and will warrant and forever de-
fend.

"In witness whereof, the said parties to these presents have
hereunto interchangeably set their hands and seals the day and
year first above written.

| Sealed and delivered in | (Signature) |
| | Fanny M. Smith, (Seal) |
| the presence of us: | Executrix. |
| | Fanny M. Smith, (Seal) |
| (Signature) Charlotte F. Smith | (Signature) |
| (Signature) Oscar Low, Jr. | |

"RECEIVED, the day and date of the above indenture, of the

above named grantee the full consideration hereinbefore mentioned.

> " (Signature) Fanny M. Smith, Extx.
> " (Signature) Fanny M. Smith."

A formal acknowledgment here follows.

The signing of these two pages and delivery of them to Skinner is practically all there is in the case to support the contention of the trust company as to the estoppel of the plaintiff. We fail to see in this aspect of the case that gross negligence which would warrant us in holding her estopped from setting up the fraud upon her or of holding her subordinated to the rights of the mortagee. We do not see that the execution of the fire policy in blank could have had any effect one way or the other. Neither do we see that the fact the plaintiff was not at the house at the time the representative of the trust company called to examine the property has any bearing upon the question of estoppel. It appears that when the representative of the trust company called he knew that this plaintiff would be out, and that he did not go there for the purpose of interviewing her as a person in possession of the property, but simply to look at the property to see if it was a good security for the amount of the loan. The declaration which was signed by the plaintiff as to no purchase money obligations was not delivered to the trust company until at least seven days after they had parted with their money, and, therefore, was not relied upon by the trust company at the time they parted with their money and cannot act in any sense as an estoppel against the plaintiff. This declaration is exceedingly vague. It reads as follows:

> "PHILADELPHIA, June 20, 1904.
>
> "WEST END TRUST COMPANY:
>
> "I hereby declare that no purchase money mortgages were given or created by the purchaser of 1515 Green St., either in the form of a judgment note, bond or mortgage, or in any other form whatsoever.
>
> "FANNY M. SMITH."

We can well believe that plaintiff when she wrote this paper

at the dictation of Skinner did not know the purpose for which the paper was to be used and supposed that she was referring to "the purchase" of the property under which she had acquired the title, and not to the fraudulent transfer of the property which had taken place without her knowledge only a week before, as stated in her testimony. Therefore, the signing of the paper under such circumstances and laboring under such a belief could not even be characterized as an act of carelessness on her part that was likely to deceive anyone. It is argued that this paper would work an estoppel as it was a fulfillment of the verbal promise made by Skinner on the day he received the money. This would practically mean ratification after the act, and no principle of equity can be found which holds that one may by construction of law be held to have ratified an action of which he was in absolute ignorance. That it would operate as a ratification of a forged deed is still more offensive to all equitable principles.

As to the alleged acknowledgement which was placed upon this forged deed it is unnecessary to further discuss it other than to make reference to the case of Reineman v. Moon, 12 Pittsburg Legal Journal (N. S.), 167, which rules that, "No man can be deprived of his property by a forged deed, and against such a defense the magistrate's certificate of acknowledgment is not conclusive, no matter what may be the bona fides of the holder."

We entirely agree with the conclusion of the chancellor in this case that there never was a real delivery of the so-called deed. Mrs. Markland, the grantee named in the deed, never authorized Skinner to accept delivery for her, and, in point of fact, she did not even know that such a deed was in existence at the time of the acknowledgment and recording thereof, which are depended upon in this case to show delivery. The facts simply show a forged paper made up by a swindler, who, without authority from the grantor and without the knowledge of the person whose name is used as grantee, secured an illicit certificate of acknowledgment by deceit practiced on a notary and placed the paper on record.

After giving the contentions of the exceptants a most care-

ful consideration we are not convinced of any error in the adjudication of the chancellor.

The exceptions are all dismissed.

*Error assigned* was decree entered in accordance with the opinion.

*Lewis Lawrence Smith,* for appellant.—Although the recording of a deed is not an absolute delivery, yet, as the fact of delivery is the assurance of a title in the hands of an innocent purchaser, it is entitled to great weight and consideration: Dempwolf v. Greybill, 213 Pa. 163; Kern v. Howell, 180 Pa. 315; Linton v. Life Ins. Co., 104 Fed. Repr. 584.

Wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it: Robinson v. Justice, 2. P. & W. 19; Beaupland v. McKeen, 28 Pa. 124; Hill v. Epley, 31 Pa. 331; Chapman v. Chapman, 59 Pa. 214; Millingar v. Sorg, 61 Pa. 471; Miller's App., 84 Pa. 391; Putnam v. Tyler, 117 Pa. 570; Redmond v. Excelsior Saving Fund & Loan Assn., 194 Pa. 643; Logan v. Gardner, 136 Pa. 588.

Whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty, as it always is with a purchaser, and will lead to the discovery of the requisite fact by the exercise of ordinary diligence and understanding. Nor is it any excuse to Mrs. Smith that she did not read the document which was put before her: Hill v. Epely, 31 Pa. 331; Greenfield's Est., 14 Pa. 489; Hunter v. Walters, L. R., 7 Ch. App. Cases, 75.

The title of a party who ignorantly encourages another to purchase will be postponed, not, however, for fraud, but for having occasioned a loss which must be borne by someone, and consequently by the author of it: Paul v. Squibb, 12 Pa. 296; Millingar v. Sorg, 61 Pa. 471; Miller's App., 84 Pa. 391; Chapman v. Chapman, 59 Pa. 214; Putnam v. Tyler, 117 Pa. 570; Lewis v. Baker, 162 Pa. 510.

*John Weaver,* with him *S. E. Megargee,* for appellees.—Whenever fraud has been committed not only is the person who com-

mitted the fraud precluded from deriving any benefit from it, but every innocent person is so likewise precluded unless he has innocently acquired a subsequent interest: Bispham on Equity, sec. 217, p. 327; Independent Building & Loan Association v. Real Estate Title Co., 156 Pa. 181.

The party setting up an estoppel must show that he parted with something upon the faith of the act complained of: Reel v. Elder, 62 Pa. 308; Waters v. Wolf, 2 Pa. Superior Ct. 200; Second Nat. Bank v. Wentzel, 151 Pa. 142; Kline v. McCandless, 139 Pa. 223.

Where one is without knowledge that another is expending money in ignorance of the first party's title, silence will not postpone. It is only when silence becomes a fraud that it postpones: Woods v. Wilson, 37 Pa. 379; Logan v. Gardner, 136 Pa. 588.

The actual visible possession of land is constructive notice to purchasers or mortgagees of the occupant's title: Rowe v. Rean, 105 Pa. 543; Hottenstein v. Lerch, 104 Pa. 454; Anderson v. Brinser, 129 Pa. 376; White v. Patterson, 139 Pa. 429.

Fraud vitiated the acknowledgment: Reineman v. Moon, 12 Pitts. L. Jour. (N. S.) 167; Van Amrigne v. Morton, 4 Wharton, 382; Arrison v. Harmstad, 2 Pa. 191; Reck v. Clapp, 98 Pa. 581.

OPINION BY MR. JUSTICE BROWN, March 8, 1909:

The inevitable finding in this case was that the deed from Fanny M. Smith, executrix and widow, to Mary Markland was a forgery. How it was perpetrated by Skinner and how, in his ingeniously fraudulent scheme to deceive a number of persons, he succeeded in imposing upon the appellant, the West End Trust Company, the worthless mortgage of the grantee named in the forged deed clearly appear in the finding of facts, each one of which was based upon competent evidence. As a result of these findings the court below correctly concluded that the appellees were entitled to the relief granted. The reasons for this conclusion are set out at length in an exhaustive and well-considered opinion by the learned chancellor who heard the case, and to it nothing can be here profitably added, unless it

be as to the contention that the certificate of the notary public, being a judicial act, is conclusive of Fanny M. Smith's acknowledgment of the deed in this proceeding, in which the appellant is to be regarded as a bona fide purchaser, without notice of any fraud practiced upon the alleged grantor in the deed to the mortgagor.           .                    .

Mrs. Smith never appeared before the notary public, and the case is not one of the conclusiveness of the truth of the certificate of a notary public of what had been acknowledged before him by a grantor in a deed, who had actually appeared before him for the purpose of acknowledging the execution of it. This deed was a forgery and the certificate of acknowledgment, fraudulently procured by the forger's inducing someone to appear before the notary public to personate Mrs. Smith, is as false as the deed itself. The certificate, deceitfully procured from the notary, was but the culmination of Skinner's forgery, making it possible for him to have the forged deed recorded. No one of the cases cited by the counsel for appellant approaches the limit to which it was attempted to lead the court below. The distinction, apparently overlooked between those cases and this one, is that here there was no appearance by the alleged grantor before the notary public, and no acknowledgment at all by her. A decree of a court resulting from the fraud practiced upon Mrs. Smith would be a dead letter upon the exposure of it. "In the eye of the law, fraud spoils everything it touches. The broad seal of the commonwealth is crumbled into dust, as against the interest designed to be defrauded. Every transaction of life between individuals, in which it mingles, is corrupted by its contagion. Why, then, should it find shelter in the decrees of courts? There is the last place on earth where it ought to find refuge. But it is not protected by record, judgment or decree; whenever and wherever it is detected, its disguises fall from around it, and the lurking spirit of mischief, as if touched by the spear of Ithuriel, stands exposed to the rebuke and condemnation of the law:" Mitchell v. Kintzer, 5 Pa. 216. The certificate of the notary in this case, procured by fraud, is nothing but cumulative evidence of the attempt of Skinner to steal Mrs. Smith's

property, and the doctrine of the rights of a bona fide purchaser has no place in the controversy. There are no such rights when the real owner of property stolen, or attempted to be stolen, from him, has done nothing to lead the purchaser of it to buy it under the belief that it was not stolen. Reliance on a forged deed, recorded on an absolutely false certificate of acknowledgment, may bring loss upon him who so relies, but neither such deed nor such certificate appended to it, can ever affect the owner of the property. This is the rule that the learned court below should have unhesitatingly announced.

In Michener and Wife v. Cavender, 38 Pa. 334, the action was a sci. fa. sur mortgage given by Eveline E. Michener and her husband on her separate estate to Cavender, the plaintiff below. The mortgage had appended to it the certificate of an alderman that Eveline E. Michener had appeared before him and acknowledged the execution of the mortgage, as required by the Act of Feb. 24, 1770. On the trial, it was clearly established that she had not appeared at all before the alderman, but the court below held that the certificate of that officer was conclusive, in the absence of evidence that the mortgagee had knowledge that it was false. In reversing the judgment against the mortgagors and in holding that there could be no recovery upon the mortgage, this court said: "To call the mortgagee a bona fide purchaser, and to put her to proof that he knew she had been cheated, would be like making her right to reclaim stolen goods dependent on the receiver's knowledge of the felony. Suppose the mortgage was a forgery out and out, and Cavender chose to invest his money in a purchase of it, must it be enforced because he did not know he was buying a forged instrument? An instrument known to be forged would not be purchased, and would, therefore, be worthless to the forger. Counterfeit notes would never be issued if a herald went before to proclaim their spuriousness. But because they are taken without notice, do they become genuine? Is every bank and individual to redeem whatever obligations bona fide holders may obtain against them, without regard to the question whether the obligation was ever issued or not? To carry the doctrine of notice to such extent, would

subvert all law and justice." In a later case—Reineman v. Moon, 12 Pitts. L. J. (N. S.) 167—the defense in a sci. fa. upon a mortgage was that it was a forgery. The court below refused plaintiff's point that, "Plaintiff appearing to be a bona fide holder for value, without notice of any fraud, the magistrate's certificate of acknowledgment is conclusive, and the verdict should be for the plaintiff." The refusal of the point was held to be correct, and we said: "No man can be deprived of his property by a forged deed or mortgage, no matter what may be the bona fides of the party who claims under it." In the very nature of things there can be no other rule.

No one of the twenty-four assignments can be sustained as pointing out any error calling for reversal, and, on the opinion of the court below, as we have briefly supplemented it, the decree is affirmed at appellant's cost.

Decree affirmed.