J-A21002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TUGBOAT INVESTMENTS, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LARES PROPERTIES, LLC, HELPFUL | : | |
| HOMEBUYERS 2, LLC | : | |
| | : | No. 2355 EDA 2022 |
| | : | |
| APPEAL OF: HELPFUL HOMEBUYERS | : | |
| 2, LLC | : | |

Appeal from the Judgment Entered September 8, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 180602432

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED APRIL 15, 2024**

Appellant Helpful Homebuyers 2, LLC, appeals from the judgment entered in this quiet title action filed by Appellee Tugboat Investments, LLC. Appellant argues that the trial court erred by concluding that both Appellant's deed to 2711 Parrish Street, Philadelphia, PA 19130 (the Property), and the deed of its predecessor in interest were void, finding in Appellee's favor on Appellant's counterclaim for an equitable lien, and by admitting certain evidence at trial. We affirm.

The trial court summarized the facts and procedural history of this case as follows:

> Appellee, a limited liability company duly registered to do business in the Commonwealth of Pennsylvania . . . [was] the rightful owner[] of real property located at 2711 Parrish Street, Philadelphia, PA 19130. Appellee was deeded over the relevant

piece of property on October 29, 2014 and the deed was recorded on March 3, 2015 Document ID No: 52891655 [(Appellee's Deed)]. On May 30, 2018, co-defendant Lares Properties, LLC [(Lares)], . . . by and through its agents and/or its associates, as well as with the participation of Mr. Kevin Dean, collectively executed a scheme to defraud the Appellee, . . . and recorded a deed with the Recorder of Deeds memorializing the alleged purchase of the Property from Appellee. The deed conveying the transaction of the Property from Appellee to Lares . . . was recorded June 4, 2018 [(Lares Deed)]. After sixteen days Lares . . ., on June 20[], 2018, then recorded a deed conveying a transaction that deeded over the Property from Lares . . . to Appellant [(Appellant's Deed)].

After these events, the Appellee commenced this action on June 18, 2021 to quiet title after a letter was sent by the United States Postal Service to the Appellee notifying the Appellee that the address of the Appellee was changed. Appellant filed its answer to Appellee's complaint and thereafter filed two motions, which were granted, to amend its answer to the complaint and add new matters asserting affirmative defenses and an equitable lien on the Property.

Trial Ct. Op., 2/7/23, at 1-2 (some formatting altered).

The trial court held a bench trial on nonconsecutive days on March 23, 2021 and May 20, 2021. The trial court summarized the ensuing procedural history of this case:

Appellee moved to amend the pleadings on the first day of trial[, March 23, 2021]. Appellee asserted that [it] should be allowed to amend to change the cause of action from a quiet title action to an ejectment action, since Appellee is out of possession. The [trial] court denied Appellee's motion, offering Appellee the opportunity to discontinue the current action and bring another action where Appellee files what [it] thinks is proper. Appellee chose to continue with the [present] action. Appellee again brought a motion for leave to amend the pleadings to conform to an ejectment action on May 18, 2021. During trial on May 20, 2021, the [trial] court again denied Appellee's motion to amend to conform to the evidence. . . .

*    *    *

At trial, [Appellee presented the deposition of Mr. Dean,[1] in which] Mr. Dean admitted to and detailed the scheme used to defraud Appellee and remove Appellee's right of possession to the Property. . . . [On October 12, 2021, t]he trial court entered a disposition in favor of the Appellee and against the Appellant. The trial court ordered that:

1. [Judgment] is entered in favor of the Appellee, Tugboat Investments, LLC and against the Appellant, Helpful Homebuyers 2, LLC on Appellee's claims against Appellant;

2. The [Lares] Deed recorded on June 4, 2018 . . . (Doc Id: 53372580) was a fraudulent transaction;

3. The [Lares] Deed recorded on June 4, 2018 . . . (Doc Id: 53372580) is hereby stricken, voided, and canceled of record;

4. [Appellant's] Deed recorded on June 20, 2018. . . (Doc Id: 53379798) is hereby stricken, voided, and canceled of record;

5. Appellee Tugboat Investments, LLC shall have immediate right of possession to the Property located at 2711 Parrish Street, Philadelphia PA, 19130 (the "Property") pursuant to [Appellee's] Deed recorded on March 13, 2015 [(Doc Id: 52891655)];

6. Appellant, Helpful Homebuyers 2, LLC shall vacate the Property immediately without causing further damages thereto;

7. The Commissioner of the Department of Records of Philadelphia shall record a deed of confirmation, with this court's order attached[], acknowledging Appellee, Tugboat Investments, LLC as the owner of real property located at 2711 Parrish Street, Philadelphia PA, 19130 pursuant to the [Appellee's Deed];

_____

[1] Mr. Dean failed to appear for the second day of trial. *See* N.T. Trial, 5/20/21, at 9.

- 3 -

8. Helpful Homebuyers 2, LLC is forever barred from asserting any right, lien, title, or interest in real property located at 2711 Parrish Street, Philadelphia PA, 19130; and

9. [Judgment] is entered in favor of the Appellee, Tugboat Investments, LLC and Against the Appellant, Helpful Homebuyers 2, LLC on Appellant's counterclaims against Appellee[.]

Trial Ct. Op. at 6, 2-3.

Appellant filed a timely post-trial motion seeking judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial. Before the trial court could rule on Appellant's post-trial motion, Appellant filed a notice of appeal. Subsequently, this Court granted Appellee's motion to quash the appeal as premature.[2] *See* Order, 2342 EDA 2021, 2/14/22 (*per curiam*).

On September 8, 2022,[3] Appellant filed a praecipe to enter judgment on the trial court's October 12, 2021 verdict. Appellant filed a timely notice of

_____

[2] While Appellant's appeal at 2342 EDA 2021 was pending, the trial court entered an order purporting to deny Appellant's post-trial motion as moot on December 6, 2021. Once a party files a notice of appeal, the trial court generally lacks jurisdiction to act further on the merits of the case. Pa.R.A.P. 1701(a); *see also Ostrowski v. Pethick*, 590 A.2d 1290, 1292 (Pa. Super. 1991) (explaining that the pendency of an appeal deprived the trial court of jurisdiction to act on a pending post-trial motion). Therefore, the trial court's December 6, 2021 order was a nullity. *See Ostrowski*, 590 A.2d at 1292.

[3] As previously stated, the trial court's December 6, 2021 order purporting to deny Appellant's post-trial motion was a nullity. Nevertheless, Appellant's post-trial motion was denied by operation of law after the trial court failed to rule on it within 120 days. *See Kinney v. Lacey*, 252 A.3d 644, 647 n.5 (Pa. Super. 2021); Pa.R.C.P. 227.4(b). Therefore, judgment was properly entered on September 8, 2022. Further, we have amended the caption to reflect the date on which judgment was entered.

appeal that same day. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following claims on appeal[4]:

1. Whether the trial court erred as a matter of law by admitting testimonial and/or documentary evidence concerning Appellant['s] . . . title insurer, as it was contrary to Pennsylvania law and the Pennsylvania Rules of Evidence, thus having unfairly prejudiced [Appellant]?

2. Whether the trial court erred as a matter of law by admitting testimonial and/or documentary evidence concerning Appellant['s] . . . agreement of sale for the subject premises, as it was contrary to Pennsylvania law and the Pennsylvania Rules of Evidence, thus unfairly prejudiced [Appellant]?

3. Whether the trial court erred as a matter of law by admitting testimonial and/or documentary evidence concerning bad acts or prior criminal acts of Kevin Dean, purported representative of [Appellee], as it was contrary to Pennsylvania law and the Pennsylvania Rules of Evidence, thus having unfairly prejudiced [Appellant]?

4. Whether the trial court erred as a matter of law by treating the first property deed from Appellee . . . to Lares . . . as a forgery and thus void *ab initio*, rather than as fraudulent and thus merely voidable and subject to Appellant's claim of being a bona fide purchaser of the subject premises?

5. Whether the trial court erred as a matter of law by treating the second property deed from Lares . . . to Appellant . . . as a forgery and thus void *ab initio*, rather than as fraudulent and thus merely voidable and subject to [Appellant's] claim of being a bona fide purchaser of the subject premises?

6. Whether the trial court erred as a matter of law in entering judgment in favor of Appellee . . . and against Appellant . . . on its equitable lien counterclaim?

---

[4] Due to the number of issues involved, we have renumbered the issues from the order Appellant has presented them in its brief for the ease of disposition.

Appellant's Brief at 8-9.

## Form of the Action

Before we address the merits of Appellant's claims, we first address the form of the action, which this Court may raise *sua sponte*. **See Sutton v. Miller**, 592 A.2d 83, 88-89 (Pa. Super. 1991) (holding that although the trial court erred in failing to dismiss a quiet title action filed by an out-of-possession plaintiff, the error was not fatal to the claim because this Court may *sua sponte* amend the pleadings to include an action in ejectment).

An action to quiet title may be brought either to compel an adverse party to commence an action of ejectment, or, where an action of ejectment will not lie, to determine the interest in a title in the land. **See** Pa.R.C.P. 1061(b)(1)-(2).

> Ordinarily, the plaintiff in an action to quiet title must be in possession of the land in controversy; **if he is out of possession, his sole remedy is an action in ejectment**. An action to quiet title may be brought only where an action in ejectment will not lie. Ejectment, being a possessory action, can be maintained if the plaintiff has a right to immediate possession with the concomitant right to demand that the defendant vacate the land.

**Plauchak v. Boling**, 653 A.2d 671, 674 (Pa. Super. 1995) (citations omitted and emphasis added).

"Ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession." **Billig v. Skvarla**, 853 A.2d 1042, 1049 (Pa. Super. 2004) (citations omitted). "The purpose of an ejectment action as opposed to quiet

title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular litigation." *Id.* at 1049-50 (citations omitted).

This Court has explained that "[p]ermitting an out-of-possession plaintiff to maintain an action to quiet title is impermissible because it constitutes an enlargement of the plaintiff's substantive rights as defined by statute, and thus exceeds the court's jurisdiction to proceed." *Plauchak*, 653 A.2d at 674 (citation omitted). However, while it is procedurally improper for an out-of-possession plaintiff to commence an action to quiet title, this Court has stated that "[e]ven where a plaintiff mistakenly institutes an action to quiet title instead of an action in ejectment, the appropriate remedy is to permit the plaintiff to amend his or her pleadings to conform to the proper action." *Id.* (citation omitted); *see also Moore v. Duran*, 687 A.2d 822, 827 (Pa. Super. 1996) (stating that "[t]his Court has previously determined that, even on appeal, we may amend the pleadings when necessary to conform to the proper form of action as established by the evidence" (citations omitted)); *Sutton*, 592 A.2d at 88-89 (same).

As stated above, the trial court denied Appellant's motion to amend the complaint to conform to an ejectment action during the trial. *See* Trial Ct. Op. at 6. The trial court further explained:

> [A]ppellee['s] use of an incorrect form of action is not fatal to the relief granted by the trial court. Even where a plaintiff mistakenly institutes an action to quiet title instead of an action in ejectment, the appropriate remedy is to permit the [plaintiff] to amend his or her pleadings to conform to the proper action. In this case,

Appellee[] actually maintained an action in ejectment, albeit improperly in conjunction with an action to quiet title. Therefore, for purposes of the instant appeal, the trial court views the claims of the parties solely in the context of an action in ejectment. *See Sutton*. . . , 592 A.2d at 89 (appellate court may *sua sponte* amend pleadings to conform action to quiet title to proper request for ejectment.)

Trial Ct. Op. at 7-8 (some citations omitted and some formatting altered).

Based on our review of the record, we agree with the trial court that because Appellee did not have actual possession of the disputed Property, Appellee's sole remedy was an action in ejectment and that the trial court's order denying Appellee's motion to amend the complaint is not fatal. *See Plauchak*, 653 A.2d at 674; *Sutton*, 592 A.2d at 88-89. Therefore, we will consider the parties' claims solely in the context of an action in ejectment. *See Moore*, 687 A.2d at 827; *Plauchak*, 653 A.2d at 674; *Sutton*, 592 A.2d at 88-89.

**Evidentiary Issues**

We first address Appellant's three claims related to the trial court's evidentiary rulings.

With respect to evidentiary rulings, this Court has explained:

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Crespo v. Hughes***, 167 A.3d 168, 177 (Pa. Super. 2017) (citations omitted and formatting altered).

Additionally, the trial court, sitting as the fact-finder, is presumed to have disregarded inadmissible evidence and considered only competent evidence. ***See Conroy v. Rosenwald***, 940 A.2d 409, 417 (Pa. Super. 2007).

Title Insurance

Appellant argues that the trial court erred by admitting evidence of title insurance. Appellant's Brief at 27-29. Specifically, Appellant claims that when Joshua Hertz, the managing member of Appellant, mentioned title insurance during his response to a question by Appellee, Appellant's counsel objected to testimony about insurance coverage, and the trial court failed to rule on the objection. ***Id.*** at 28. Appellant contends that the trial court erred by admitting testimony about Appellant's title insurance because evidence of insurance coverage is generally not admissible because "fact-finders should not be tempted to render decisions based upon the extraneous consideration that an insurance company will actually pay the bill." ***Id.*** (quoting ***Paxton Nat'l Ins. Co. v. Brickajlik***, 522 A.2d 531, 533 (Pa. 1987)). Appellant further argues that the "mere mention of insurance" is prejudicial and is grounds for a mistrial. ***Id.*** (citations omitted).

Pennsylvania Rule of Evidence 411 provides:

Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

- 9 -

Pa.R.E. 411.

This Court has explained that "the general rule in Pennsylvania is that evidence of insurance is irrelevant and prejudicial and justifies the grant of a mistrial. However, the mere mention of the word insurance does not necessitate a new trial unless the aggrieved party can demonstrate prejudice." **Allied Elec. Supply Co. v. Roberts**, 797 A.2d 362, 364 (Pa. Super. 2002) (**Allied**) (citations omitted and formatting altered).

Here, following our review of the record, the parties' briefs, and the well-reasoned conclusions of the trial court, we affirm on the basis of the trial court's analysis of this issue. **See** Trial Ct. Op. at 18-19. Specifically, we agree with the trial court that this evidence was relevant to Appellant's chain of title and whether Appellant was a subsequent bona fide purchaser of the property. **See id.** Evidence of insurance is not admissible for purpose of proving a party "acted negligently or otherwise wrongfully[,]" but is admissible for other purposes. **See** Pa.R.E. 411. Further, Appellant has failed to demonstrate prejudice resulting from the Appellant's principal mention of title insurance by Appellant's managing member who testified about how he learned about the dispute over the Property and what actions he took as a result. **See** N.T. Trial, 5/20/21, at 106; **see also Allied**, 797 A.2d at 364. Lastly, we note that when a trial court sits as the fact-finder, it is presumed to have disregarded inadmissible evidence and considered only competent evidence. **See Conroy**, 940 A.2d at 417. Therefore, we discern no abuse of discretion or error of law and Appellant is not entitled to relief on this issue.

Agreement of Sale

Appellant also claims that the trial court erred by admitting Appellant's agreement of sale with Lares for the Property. Appellant's Brief at 29-32. Appellant argues that the agreement was moot because an agreement of sale for real property merges into the deed. *Id.* at 29-30 (citing *In re Mihordin*, 162 A.3d 1166 (Pa. Super. 2017)). Appellant further contends that the admission of the agreement of sale was irrelevant and served "no purpose other than to confuse the issues before the trial court," and its admission prejudiced Appellant. *Id.* at 31.

The Pennsylvania Rules of Evidence state that unless "otherwise provided by law," "[a]ll relevant evidence is admissible," while "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

This Court has explained:

> The general rule, **in the absence of fraud** or mistake, and of an intent to the contrary, is that an antecedent contract for the purchase of land is merged in the deed . . . upon the delivery and acceptance of the deed, there exists a '*prima facie* presumption' of merger. The law presumes that delivery and acceptance of a

- 11 -

> deed consummates the prior agreement and precludes the parties from looking behind the conveyance to subjects of strife suggested by their previous . . . contracts; this preclusion applies to all parties in interest, even third parties. When a deed has been executed in pursuance of a prior agreement, it is *prima facie* evidence the latter has so merged that no action could be maintained on any of its covenants[.]

***Mihordin***, 162 A.3d at 1171 (citations omitted, formatting altered, and emphasis added).

In other words, under the merger doctrine, "a purchase is consummated by the conveyance; after which the parties have no recourse to each other except for imposition or fraud, or upon the covenants in the deed." ***Id.*** at 1172 (citation omitted). In ***Mihordin***, the petitioners sought to reform the deed based on an alleged scrivener's error that omitted a term from the deed that was included in the parties' agreement of sale. ***Id.*** at 1169. This Court held that the petitioners failed to present sufficient evidence of a scrivener's error or mistake that would overcome the merger doctrine and support reformation of the deed based on the language of their agreement of sale. ***Id.*** at 1175-77.

Based on our review of the record, we discern no abuse of discretion or error of law by the trial court in overruling Appellant's merger objection.[5] ***See Crespo***, 167 A.3d at 177. Specifically, we conclude that the merger doctrine does not apply here because it does not apply in instances of fraud, and the

---

[5] The trial court did not address whether the merger doctrine barred the admission of the agreement of sale between Lares and Appellant in its Rule 1925(a) opinion.

- 12 -

trial court found that Appellee had established fraud by other competent evidence. *See* Trial Ct. Op. at 8-12.[6]

As for Appellant's argument that the agreement of sale between Lares and Appellant was not relevant, we affirm on the basis of the trial court's opinion. *See id.* at 18 (concluding that the agreement of sale was relevant to Appellee's claim of fraud). Therefore, we discern no abuse of discretion or error of law, and Appellant is not entitled to relief on this issue.

Kevin Dean's Prior Bad Acts

Appellant next claims that the trial court erred by admitting evidence of Kevin Dean's prior bad acts, specifically that Dean had previously obtained a false driver's license and opened a bank account in Appellee's name. Appellant's Brief at 32-35. Appellant argues that the admission of this evidence of Dean's actions violated Pa.R.E. 404(b)(1), which prohibits the admission of an individual's crimes or other bad acts to prove that individual acted consistently with those crimes or acts. *Id.* at 32-33. Appellant contends that Appellee did not cite any of the exceptions enumerated in Rule 404(b)(2) that would permit admission of evidence of Dean's prior bad acts. *Id.* at 33. Additionally, Appellant claims that Dean's prior bad acts were inadmissible under Pa.R.E. 608(b). *Id.* at 33-34. Lastly, Appellant argues that even if Dean's prior bad acts were admissible under one of exceptions to Rule 404(b)(2), that evidence should have been excluded because the danger of

---

[6] Here, the trial court did not address whether the merger doctrine barred the admission of the agreement of sale between Lares and Appellant.

unfair prejudice and confusing the issues regarding title to the Property outweighed its probative value. *Id.* at 34-35.

Before addressing the merits of this issue, we must determine whether Appellant has preserved this claim for review. This Court may raise this issue of waiver *sua sponte*. *See Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." *Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

"In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue." *Thompson v. Thompson*, 963 A.2d 474, 475-76 (Pa. Super. 2008) (citation omitted and formatting altered); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Further, a party waives any grounds to the admissibility of evidence that the party did not raise in an objection. *See Brown v. Halpern*, 202 A.3d 687, 708 (Pa. Super. 2019) (concluding that where the defendants only raised a hearsay objection at trial, their arguments that the evidence was irrelevant were waived on appeal). Similarly, this Court has held that "[a] new and different theory of relief may not be successfully advanced for the first time on appeal." *PCS*

- 14 -

*Chadaga v. Torres*, 252 A.3d 1154, 1158 (Pa. Super. 2021) (citations omitted).

Here, Appellant objected to the relevance of testimony regarding Dean's criminal activities at trial. *See* N.T. Trial, 5/20/21, at 6 (Appellant's counsel stated "I'm mak[ing] a continuing objection to any mention of any crime Mr. Dean has been charged with unless it's proven that it is pertinent to the allegations in this case"). However, Appellant did not argue that Dean's testimony should be excluded because the danger of unfair prejudice or its tendency to confuse the issues outweighed its probative value. Further, Appellant did not argue that evidence of Dean's criminal activity was inadmissible under Rules 404(b) or 608. Therefore, Appellant has waived these arguments. *See Chadaga*, 252 A.3d at 1158; *Brown*, 202 A.3d at 708; *Thompson*, 963 A.2d at 475-76. Therefore, Appellant is not entitled to relief on this claim.[7]

**The Deeds**

Appellant's next two issues relate to the trial court's judgment cancelling the Lares Deed and Appellant's Deed. First, Appellant argues that the trial court erred by concluding that that the Lares Deed was a forgery and void *ab initio*. Appellant's Brief at 17-21. Specifically, Appellant claims that there is distinction between a forged deed, which is void *ab initio*, and a fraudulent

---

[7] Even if not waived, we would affirm on the basis of the trial court's opinion regarding the admission of Dean's testimony. *See* Trial Ct. Op. at 20-21.

deed, which is "merely voidable[.]" *Id.* at 17 (citations omitted). Appellant contends that Dean's signing of the Lares Deed on behalf of Appellee, even if done in a deliberate attempt to defraud, was not a forgery. *Id.* at 19. Appellant further argues that where the signature for the deed is acquired by fraudulent means, the signature is not a forgery. *Id.* at 19-20 (citing *Ford v. Oliver*, 176 A.3d 891, 901-02 (Pa. Super. 2017)). Appellant contends that the trial court erred by relying on the definition of criminal forgery to conclude that the Lares Deed was a forged deed rather than a fraudulent deed. *Id.* at 20-21 (citing *Ford*, 176 A.3d at 903). Therefore, Appellant concludes that the trial court erred by concluding that the Lares Deed was void *ab initio* as forgery instead of a voidable fraudulent deed.

Appellant's other deed-related claim follows from its argument that the Lares Deed was not void *ab initio*. Appellant argues that the trial court erred in voiding Appellant's Deed because Appellant was a subsequent bona fide purchaser of the Property. Appellant's Brief at 22-24. Appellant contends that a fraudulent deed will be upheld if the subsequent grantee can show that it was a bona fide purchaser of the real property. *Id.* At 22. Appellant claims that it was a bona fide purchaser because it purchased the Property for valuable consideration, did not have any knowledge or notice of another's interest in the Property, and acted in good faith. *Id.* at 23-24. Therefore, Appellant concludes that the trial court erred by voiding Appellant's Deed because although the Lares Deed was fraudulent, Appellant was a bona fide purchaser of the Property.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

**Bank of N.Y. Mellon v. Bach**, 159 A.3d 16, 19 (Pa. Super. 2017) (**Bach**)

(citation omitted).

When reviewing an order resolving a post-trial motion for JNOV, our standard of review is as follows:

A judgment notwithstanding the verdict can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [trial] court could have properly made its award, then we must affirm the trial court's denial of the motion for judgment notwithstanding the verdict. A judgment notwithstanding the verdict should be entered only in a clear case.

*Karden Constr. Servs., Inc. V. D'Amico*, 219 A.3d 619, 627 (Pa. Super.

2019) (*Karden*) (citation omitted).

Our Supreme Court has explained that a judgment notwithstanding the

verdict

> should only be entered in a clear case with any doubts resolved in
> favor of the verdict winner. An appellate court "stands on a
> different plane" than a trial court, and it is the trial court that has
> the benefit of an "on-the-scene evaluation of the evidence." As
> such, while the appellate court may disagree with a verdict, it may
> not grant a motion for JNOV simply because it would have come
> to a different conclusion. Indeed, the verdict must stand unless
> there is no legal basis for it.

*Menkowitz v. Peerless Publications, Inc.*, 211 A.3d 797, 804 (Pa. 2019)

(citations omitted).

> [T]o prevail in an ejectment action, the plaintiff must show title at
> the commencement of the action and can recover, if at all, only
> on the strength of his own title, not because of weakness or
> deficiency of title in the defendant. If a plaintiff in ejectment has
> presented at trial *prima facie* evidence that it has title to the
> property at issue, the burden then shifts to the defendant, unless
> the plaintiff's proof necessarily defeats the plaintiff's claim of title.
> Conversely, if the plaintiff's claimed chain of title is faulty, the
> plaintiff has not shown a *prima facie* case, and the plaintiff's
> ejectment case fails.

*Becker v. Wishard*, 202 A.3d 718, 722 (Pa. Super. 2019) (citations and

footnote omitted, some formatting altered).

As a general rule, there is a presumption that deeds are valid "to rebut

the presumption of the due execution of a deed, one must prove forgery by

clear and convincing evidence." *Nebesho v. Brown*, 846 A.2d 721, 727 (Pa.

Super. 2004) (citation omitted)). "Forgery is the fraudulent making or altering

- 18 -

of a writing to the prejudice of another's right." *Ford*, 176 A.3d at 901 (citation omitted); *see also Smith v. Markland*, 72 A. 1047, 1049 (Pa. 1909) (the same); *accord* 18 Pa.C.S. § 4101(a)(1)-(2) (defining the crime of forgery as "with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor . . . alters any writing of another without his authority" or "makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act").[8]

"[A] forged, fraudulent and spurious instrument is not binding on any person and is wholly inoperative to transfer any title or right to property whether the holder is an innocent or guilty purchaser." *Harris v. Harris*, 239 A.2d 783, 784 (Pa. 1968) (citations and footnote omitted). A forged deed is "not merely a voidable instrument, it was void." *Smith*, 72 A. at 1051 (citations omitted). A bona fide purchaser may not acquire title from a grantor who possesses a forged deed. *See id.* at 1055-56 (stating that "the doctrine of the rights of a bona fide purchaser has no place in [a case involving a forged deed]. . . . Reliance on a forged deed, . . . may bring loss upon him who so relies; but . . . such deed . . . can ever affect the owner of the property");

_____

[8] In *Levy v. First Pennsylvania Bank N.A.*, 487 A.2d 857 (Pa. Super. 1985), *overruled on other grounds by Springfield Twp. v. Mellon PSFS Bank*, 889 A.2d 1184 (Pa. 2005), this Court relied on 18 Pa.C.S. § 4101, among other authority, to conclude that "forgery", as used in the Uniform Commercial Code, encompassed an unauthorized signature where the Uniform Commercial Code did not contain a definition for forgery. *Levy*, 487 A.2d at 861 n.11.

*Williamson v. Barrett*, 24 A.2d 546, 548 (Pa. Super. 1942) (explaining that a bona fide purchaser "may be entirely guiltless of wrongdoing, but the plaintiff, on the other hand, is not to be the victim of a forged instrument and thereby be deprived of his property no matter what may be the bona fides of the party who claims under it. In the eye of the law, fraud spoils everything it touches" (citations omitted and some formatting altered)).

In *Ford*, the plaintiffs claimed that they had agreed to sell one of two parcels of real property to co-defendant Oliver, signed only the signature page for a deed at closing, and subsequently learned that Oliver had recorded a deed, containing that signature page, which conveyed both parcels from the plaintiffs to Oliver. *Ford*, 176 A.3d at 894-95, 901-02. Nearly fourteen years later, the plaintiffs sued Oliver, and others, seeking a declaratory judgment that the deed from plaintiffs to Oliver, and all subsequent deeds, were void *ab initio*. *Id.* at 896. The plaintiffs also argued that the statute of limitations did not apply or had been tolled because the deed from the plaintiffs to Oliver was a forgery, and therefore was void *ab initio*. *Id.* at 901-02.

On appeal, this Court observed that "not every fraud is a forgery." *Id.* at 901. The *Ford* Court concluded that plaintiffs were not entitled to relief because "[a]t most, the [plaintiffs] have alleged that they were induced into signing the deed under a false pretense that the deed would include language limiting the conveyance to only Parcel One. That is not forgery." *Id.* at 902 (citation omitted); *see also id.* (stating that the plaintiffs "admit that their signatures are genuine, and claim only that they were fraudulently induced

into signing the . . . [d]eed. . . . [Therefore, the d]eed would be voidable and not, as the [plaintiffs] claim, void" (citation omitted)).[9] Lastly, the **Ford** Court explained that unlike prior decisions involving forged deeds, the plaintiffs had legal authority to sell both parcels at issue. **See id.** at 903.

Here, the trial court thoroughly addressed Appellant's claims and concluded that the Lares Deed is a forgery, and therefore both it and Appellant's Deed are void *ab initio*. Following our review of the record, the parties' briefs, and the well-reasoned conclusions of the trial court, we affirm on the basis of the trial court's analysis of this issue. **See** Trial Ct. Op. at 8-12.[10] On this record, considering the facts in the light most favorable to Appellee as the verdict winner, there is clear and convincing evidence that the Lares Deed is a forgery. **See Bach** 159 A.3d at 19; **Nebesho**, 846 A.2d at 727. Specifically, Appellee presented evidence that Dean, who has never been a member, employee, or agent of Appellee, worked with others to change the

---

[9] The **Ford** Court also concluded that the plaintiffs were not entitled to relief based on the 18 Pa.C.S. § 4101 because the plaintiffs "fail[ed] to explain how the definition of criminal forgery supports their argument that the conduct they have alleged renders the" deed a forgery. **Ford**, 176 A.3d at 903.

[10] We affirm on the basis of the trial court's opinion except insofar as the trial court cited to **Kaiser Energy Inc. v. Department of Environmental Resources**, 535 A.2d 1255 (Pa. Cmwlth. 1998). **See** Trial Ct. Op. at 11. In **Roberts v. Estate of Pursley**, 718 A.2d 837 (Pa. Super. 1998), this Court declined to follow **Kaiser Energy**, explaining that the Commonwealth Court's conclusion that "[t]he bona fide purchaser concept applies only to purchasers of legal title[]" was "inconsistent with the bona fide purchaser concept contained within the recording statute of this Commonwealth." **Roberts**, 718 A.2d at 841 (citations omitted and formatting altered).

address on his driver's license to match Appellee's business address, changed official documents to make Dean appear to be the sole member of Appellee, opened a bank account in Appellee's name, and then signed the Lares Deed purportedly on behalf of Appellee. **See** Trial Ct. Op. at 9-10; **see also Ford**, 176 A.3d at 901. Therefore, we agree with the trial court that the Lares Deed is a forgery because it was a writing that was fraudulently created to the prejudice of Appellee's right. **See Smith**, 72 A. at 1049; **Ford**, 176 A.3d at 901.[11] As a forgery, the Lares Deed is void *ab initio*. **See Harris**, 239 A.2d at 784; **Smith**, 72 A. at 1051; **Williamson**, 24 A.2d at 548. Therefore, even if Appellant was a bona fide purchaser for value, Appellant could not acquire title to the Property from Lares. **See Smith**, 72 A. at 1055-56; **Williamson**, 24 A.2d at 548.

We add that Appellant's reliance on **Ford** is misplaced because the facts of that case are distinguishable. In **Ford**, the plaintiffs were the owners of the two parcels of real property at issue, agreed to sell one parcel to one of the co-defendants, but the plaintiffs signed a deed conveying both parcels. **See Ford**, 176 A.3d at 894, 901-02. The **Ford** Court held that

_____

[11] We discern no error of law to the extent that the trial court relied in part on the definition of forgery found in the Crimes Code in a civil matter. **See, e.g.**, **Levy**, 487 A.2d at 861 n.11 (citing the definition of criminal forgery while interpreting the Uniform Commercial Code). We note that in **Ford**, this Court rejected the plaintiffs' arguments that the deed in that case was a forgery citing the definition of criminal forgery because the plaintiffs failed to explain how the Crimes Code definition supported their claim. **See Ford**, 176 A.3d at 903. The **Ford** Court did not state that the definition of criminal forgery could not be applied in civil matters.

notwithstanding the plaintiffs' allegations of fraud surrounding the signing of the deed, the deed was not a forgery. In contrast to the instant case, the plaintiffs in **Ford** argued that the defendant had procured their signatures on the deed by fraud, but they did not deny that they had signed the deed. **See id.** at 901-03. Here, we agree with the trial court that the evidence has established that the Lares Deed itself is a forgery, therefore it is void *ab initio*. For these reasons, Appellant is not entitled to relief on these claims.

**Equitable Lien**

Appellant next argues that the trial court erred by finding in favor of Appellee on Appellant's counterclaim for an equitable lien. Appellant's Brief at 24-27. Specifically, Appellant contends that the trial court erred in relying on **Baranofsky v. Weiss**, 182 A. 47 (Pa. Super. 1935) to conclude that there must be security interest to impose an equitable lien. **Id.** at 24-25 (citing **Baranofsky**, 182 A. at 48-49). Appellant claims that it is entitled to an equitable lien on the Property because Appellee has been unjustly enriched by the $44,000 Appellant spent on repairs and renovations to the Property.[12] **Id.** at 25-27 (citing, *inter alia*, N.T. Trial, 5/20/21, at 83).

"Unjust enrichment is essentially an equitable doctrine. It is well-established that courts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute. In addition, a trial court

---

[12] Appellant notes that although it also paid real estate taxes and insurance for the Property, Appellant is not seeking to have those amounts included in its request for an equitable lien on the Property. Appellant's Brief at 26 n.3.

must formulate an equitable remedy that is consistent with the relief requested." ***Gutteridge v. J3 Energy Grp., Inc.***, 165 A.3d 908, 916 (Pa. Super. 2017) (*en banc*) (citations omitted and formatting altered).

> Additionally, this Court has explained:
>
> To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for [him] to retain. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather the most critical element of this equitable doctrine, which is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

***Id.*** at 917 (citations omitted and formatting altered).

> This Court has explained that
>
> where a bona fide purchaser of property makes improvements and the real owner seeks equitable relief, the court will compel him to pay for the improvements to the extent that they have **enhanced the value** of the land. This includes payment for expenditures for insurance and for improvements necessary to maintain the property to the extent that the property was benefited thereby.

***Nebesho***, 846 A.2d at 729 (citations and quotation marks omitted and emphasis in original); ***see also Karden***, 219 A.3d at 628 (stating that "[i]n assessing damages for unjust enrichment, however, enrichment is measured by the value of the benefit to the owner, not by the value of the invoice submitted by the subcontractor" (citation omitted)).

In **Nebesho**, the trial court entered a decree that cancelled a deed from the plaintiff to co-defendant Milos after finding that co-defendant Brown (or someone acting on his behalf) had forged the plaintiff's signature on the deed to Milos. **Nebesho**, 846 A.2d at 723-25. The trial court also ruled that the plaintiff had to reimburse Milos for half of the mortgage payments that the defendants made on the property and imposed a lien on the plaintiff's interest in the property in favor of Milos in that amount. **Id.** at 725. On appeal, Milos argued that in addition to the mortgage payments she was also entitled to reimbursement from the plaintiff for her expenditures to repair, maintain, and improve the property. **Id.** at 729. This Court concluded that Milos was not entitled to an equitable lien for the costs of repairs and improvements to the property because the trial court did not find her evidence credible which purported to prove that she had enhanced the value of the property. **Id.**

Here, the trial court explained, in relevant part:

On June 18, 2018, Appellant entered into an agreement with a contractor, Razors Edge Construction, to perform renovation work on the Property. According to the contract, the total price for the agreed upon price was $125,000. As of May 20, 2021, the contractor performed, according to Mr. Hertz, about half of the work. Additionally, as of May 20, 2021, Appellant had paid the contractor, according to Mr. Hertz, approximately $44,000 under the contract. Therefore, Appellant seeks an equitable lien in the amount of $44,000. Because Appellant only alleged its own loss as the measure of recovery, *i.e.* the value of labor and materials expended, and not how the Appellee had been benefitted or the increased value of the [Property], Appellant is not entitled to relief.

\* \* \*

- 25 -

Appellee argues that an equitable lien is not determined by the amount paid to a contractor, but how much the value of the land has been enhanced. Conversely, Appellee claims that Appellant is not entitled to reimbursement for any work performed on the Property. This court shares the Appellee's belief. In **Nebesho v. Brown**, the Superior Court held that "where a bona fide purchaser of property makes improvements and the real owner seeks equitable relief, the court 'will compel him to pay for the improvements to the extent that they have enhanced the value of the land.' This includes payment for expenditures for insurance and for improvements necessary to maintain the property 'to the extent that the[] property was benefited thereby.'" [**Nebesho**, 846 A.2d at 729]. Further, our Supreme Court has found that an "appellant cannot merely allege its own loss as the measure of recovery—*i.e.*, the value of labor and materials expended—but instead must demonstrate that appellee has in fact been benefitted." **Meehan v. Cheltenham Twp.**, 189 A.2d 593 (Pa. 1963). "Enrichment is 'measured by the value of the benefit to the owner, not by the value of the invoice submitted by the subcontractor.'" **Karden Constr. Servs. v. D'Amico**, 219 A.3d 619 628 (Pa. Super. 2019) [(citation omitted)]. . . . In this matter, the Appellant is not entitled to its equitable lien, as the Appellant failed to demonstrate how Appellant enhanced the value of the land.

Trial Ct. Op. at 12-13, 16-17 (some citations omitted).

Based on our review of the record, we discern no error in the trial court's conclusion that Appellant is not entitled to an equitable lien because Appellant failed to establish how its repairs and renovations enhanced the value of the Property. **See Karden**, 219 A.3d at 627; **Bach**, 159 A.3d at 19. We agree with the trial court that the correct measure of an equitable lien is the value of the benefit that the improvements conferred on Appellee, not the amount that Appellant spent on those improvements. **See Karden**, 219 A.3d at 628; **Nebesho**, 846 A.2d at 729. Here, Appellant did not present any evidence establishing that its improvements enhanced the Property's value. Therefore,

Appellant is not entitled to relief on this claim.[13]  **See Nebesho**, 846 A.2d at 729.

For these reasons, we affirm the judgment entered in favor of Appellee.

Judgment affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/15/2024

---

[13] To the extent that Appellant argues that the trial court erred by relying on **Baranofsky** to conclude that an equitable lien requires a security interest, we conclude that this argument mischaracterizes the trial court's conclusions. The trial court concluded that **Baranofsky** was not applicable because it involved an equitable lien on chattels leased to the defendant and not improvements made to a property.  **See** Trial Ct. Op. at 14.  The trial court also did not conclude that an equitable lien required a security interest. Rather, the trial court noted that in **Baranofsky**, the amount of equitable lien was equal to the security deposit the defendant had paid under the lease.  **See id.**  Further, the trial court discussed the lack of a security interest when distinguishing the facts of this case from those of **Gladowski v. Felczak**, 31 A.2d 718 (Pa. 1943).  **See id.** at 13.  We discern no error of law in the trial court's conclusions that **Baranofsky** and **Gladowski** are not applicable to these facts.

0078_OPINION_FILED236_NOTICE_GIVEN

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CIVIL TRIAL DIVISON

TUGBOAT INVESTMENTS, LLC     :     JUNE Term 2018

            :     NO. 2432

   Appellee         :

            :

   vs.           :

            :

HELPFUL HOMEBUYERS 2, LLC    :     COMMMONWEALTH COURT

            :

Appeal of: Helpful Homebuyers 2, LLC   :

            :     TRIAL COURT NO. 180602432

            :

   Appellant        :     SUPERIOR COURT NO. 2355 EDA 2022

OPFLD-Tugboat Investments Llc Vs Lares Properties Llc



18060243200171

### OPINION

KENNEDY, J.                   February 7, 2023

Helpful Homebuyers 2, LLC (hereinafter "Appellant") appeals from the October 6th, 2021, order entered in the Philadelphia County Court of Common Please, entering a judgement in favor of Tugboat Investments, LLC (hereinafter "Appellee") and against Appellant, granting Appellee immediate possession of the property located at 2711 Parrish Street, Philadelphia PA, 19130 (hereinafter the "Property"), that the Deeds recorded on June 4th, 2018 and June 20, 2018 respectfully were both void, stricken, and cancelled, and that Appellant vacate the Property immediately. The relevant facts and procedural history follow below.

## FACTS AND PROCEDURAL HISTROY

Appellee, a Limited Liability Company duly registered to do business in the Commonwealth of Pennsylvania under the entity number 4231372 were the rightful owners of real property located at 2711 Parrish Street, Philadelphia PA, 19130. Appellee was deeded over

the relevant piece of property on October 29, 2014 and the Deed was recorded on March 3, 2015 Document ID No: 52891655. On May 30, 2018, co-defendant Lares Properties, LLC, a Limited Liability Company duly registered to do business in the Commonwealth of Pennsylvania under the entity number 6610767, by and through its agents and/or its associates, as well as with the participation of Mr. Kevin Dean, collectively executed a scheme to defraud the Appellee, Tugboat Investments, LLC and recorded a deed with the Recorder of Deeds memorializing the alleged purchase of the Property from Appellee. The deed conveying the transaction of the Property from Appellee to Lares Properties, LLC was recorded June 4, 2018. After, sixteen days, Lares Properties LLC, on June 20th, 2018, then recorded a deed conveying a transaction that deeded over the Property from Lares Properties, LLC to Appellant.

After these events, the Appellee commenced this action on June 18, 2021 to quiet title after a letter was sent by the United States Postal Service to the Appellee notifying the Appellee that the address of the Appellee was changed. Appellant filed its answer to Appellee's complaint and thereafter filed two motions, which were granted, to amend its answer to the complaint and add new matters asserting affirmative defenses and an equitable lien on the Property.

Appellant subsequently filed a Motion for Judgement on the Pleadings on October 5, 2020, which was subsequently denied with prejudice.

At Trial, Mr. Dean admitted to and detailed the scheme used to defraud Appellee and remove Appellee's right of possession to the Property. After conducting a non-jury trial held on May 20, 2021, as well as considering the Post Trial Memorandums filed by both parties, the Trial Court entered a disposition in favor of the Appellee and against the Appellant. The Trial Court ordered that:

2

1. Judgement is entered in favor of the Appellee, Tugboat Investments, LLC and Against the Appellant, Helpful Homebuyers 2, LLC on Appellee's claims against Appellant;

2. The Deed recorded on June 4, 2018 from Tugboat Investments LLC to Lares Properties LLC (Doc Id: 53372580) was a fraudulent transaction;

3. The Deed recorded on June 4, 2018 from Tugboat Investments, LLC to Lares Properties LLC (Doc Id: 53372580) is hereby stricken, voided, and canceled of record;

4. The Deed recorded on June 20, 2018 from Lares Properties, LLC to Helpful Homebuyers 2, LLC (Doc Id: 53379798) ) is hereby stricken, voided, and canceled of record;

5. Appellee Tugboat Investments, LLC shall have immediate right of possession to the Property located at 2711 Parrish Street, Philadelphia PA, 19130 (the "Property") pursuant to the Deed recorded on March 13, 2015;

6. Appellant, Helpful Homebuyers 2, LLC shall vacate the Property immediately without causing further damages thereto;

7. The Commissioner of the Department of Records of Philadelphia shall record a Deed of Confirmation, with this Court's Order attached., acknowledging Appellee, Tugboat Investments, LLC as the owner of real property located at 2711 Parrish Street, Philadelphia PA, 19130 pursuant to the above Deed (Doc Id: ID No: 52891655);

8. Helpful Homebuyers 2, LLC is forever barred from asserting any right, lien, title, or interest in real property located at 2711 Parrish Street, Philadelphia PA, 19130; and

9. Judgement is entered in favor of the Appellee, Tugboat Investments, LLC and Against the Appellant, Helpful Homebuyers 2, LLC on Appellant's Counterclaims against Appellee;

Appellant then filed Motions for Post Trial Relief on October 22, 2021, which were denied in its entry on December 6, 2021 as moot due to the Court no longer having jurisdiction to rule on the merits because an appeal was made to the Superior Court. Appellant then filed a Motion For Stay Pending Appeal on November 15, 2021 to preserve the status quo pending appeal to the Superior Court, which was subsequently denied in its entry on December 30, 2021.

3

Appellant then filed a Motion for Reconsideration on December 10, 2021, which was also subsequently denied in its entry on December 30, 2021.

Before this instant appeal, Appellant filed two Notices of Appeal to the Superior Court in this case. The initial Notice of Appeal at 2342 EDA 2021, filed on November 10, 2021 was quashed by the Superior Court as premature and was remanded back to this Court for disposition of the Post-Trial Motions filed on October 22, 2021. The second Notice of Appeal at 293 EDA 2022 was also quashed as premature due to the Trial Court not ruling upon the Post-Trial Motions since the acknowledgement of receipt of remittal of the record at 2342 EDA 2021. On October 3, 2022, Appellant filed with the Superior Court an Application to Withdrawal Appeal for Appeal at 2262 EDA 2022. The Superior Court, on October 31, 2022 accepted as praecipe to discontinue and the appeal was discontinued. Appellants filed a Notice of Appeal and timely complied with the Trial Court's Order entered pursuant to Pa.R.C.P. 1925(b).

## MATTERS RAISED ON APPEAL

Appellant Helpful Homebuyers 2, LLC raises the following issues on appeal:

1. Whether the Appellee's error in bringing a quiet tile action instead of an ejectment action is a fatal error that prevents the court from granting relief?

2. Whether the Court erred as a matter of law by treating the deed from Appellee to Lares Properties, LLC for the subject premises as a forgery and thus void ab initio, rather than as fraudulent and thus voidable and subject to HHB's claim of being a bona fide purchaser of the subject premises?

3. Whether the Court erred as a matter of law in entering judgment in favor of Appellee and against HHB on HHB's equitable lien counterclaim?

4

4. Whether the Court's admission of testimonial and/or documentary evidence at trial concerning Appellee's agreement of sale for the subject premises, was contrary to Pennsylvania law and the Pennsylvania Rules of Evidence, thus prejudicing HHB.

5. Whether the Court's admission of testimonial and/or documentary evidence at trial concerning HHB's title insurer, was contrary to Pennsylvania law and the Pennsylvania Rules of Evidence, thus prejudicing HHB?

6. Whether the Court's admission of testimonial and/or documentary evidence at trial concerning real estate other than the subject premises, was contrary to Pennsylvania law and the Pennsylvania Rules of Evidence, thus prejudicing HHB?

7. Whether the Court's admission of testimonial and/or documentary evidence at trial concerning documentation allegedly from Bank of America, was contrary to Pennsylvania law and the Pennsylvania Rules of Evidence, thus prejudicing HHB?

8. Whether the Court's admission of testimonial and/or documentary evidence at trial concerning prior bad or criminal acts of Kevin Dean, purported representative of Appellee, was contrary to Pennsylvania law and the Pennsylvania Rules of Evidence, thus prejudicing HHB?3

## DISCUSSION

### I. The Appellee bringing a quiet title action instead of an ejectment action, is not a fatal error that prevents the Trial Court from granting a relief.

As a general matter, ejectment actions may be used by a party who is not in possession of real property to obtain possession of real property under a claim of title that is superior to that of the person in possession of the property. Conversely, quiet title actions are normally brought by a party who is in current possession of real property to extinguish the rights of others which interferes with the claimants title and could otherwise be used to challenge that title. Finally, an

5

action to quiet title may only be brought "where an action of ejectment will not lie." Pa. R.C.P. 1061(b)(2).

In the instant case, Appellee moved to amend the pleadings on the first day of trial. Tugboat Investments, LLC v. Helpful Homebuyers 2, LLC, 3/31/21, 12-16. Appellee asserted that they should be allowed to amend to change the cause of action from a quiet title action to an ejectment action, since Appellee is out of possession. The Court denied Appellee's motion, offering Appellee the opportunity to discontinue the current action and bring another action where Appellee files what he thinks is proper. Appellee chose to continue with the action. Appellee again brought a Motion for Leave to Amend the Pleadings to conform to an ejectment action on May 18, 2021. During trial on May 20, 2021, the Court again denied Appellee's motion to amend to conform to the evidence. Tugboat Investments, LLC v. Helpful Homebuyers 2, LLC, March 31, 2021, May 20, 2021, 65-66. 1.

## A. Amendments Generally

Pennsylvania Law allows parties to make amendments to have the case be properly adjudicated on its merits. Under Pa.R.C.P. 1033(a), "[a] party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action...or otherwise amend the pleading...An amendment may be made to conform the pleading to the evidence offered or admitted." A party's right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party. Morrison Informatics, Inc. v. Members 1st Fed. Credit Union, 97 A.3d 1233, 1240 (Pa. Super. 2014). The policy underlying this rule of liberal leave to amend is to ensure that parties get to have their cases decided on the substantive case presented, and not on legal formalities. Id. The right to amend should not be withheld where there is some reasonable possibility that the amendment can

6

be accomplished successfully. Id. at 1240-41. Amendments should be allowed at any stage of the adversary process to secure a decision of the case on its merits, unless unfair surprise or prejudice to the other party would result or the proposed amendment is against a positive rule of law." Viener v. Jacobs, 834 A.2d 546, 560 (Pa. Super. 2013). 2.

## B. Amendments in Quiet Title/Ejectment Actions

A party who mistakenly brings an ejectment action instead of a quiet title action may amend the action to receive proper adjudication. In a case directly on point, use of an incorrect form of action in a quiet title/ejectment action is not fatal to the claims brought by the aggrieved party. In Plauchak v. Boling, 653 A.2d 671, 674 (1995), the court held the following: It is procedurally improper to simultaneously commence both an action in ejectment and an action to quiet title regarding the same parcel of real estate. Ordinarily, the Appellee in an action to quiet title must be in possession of the land in controversy; if he is out of possession, his sole remedy is an action in ejectment. Grossman v. Hill, 122 A.2d 69, 71 (1956). An action to quiet title may be brought only where an action in ejectment will not lie. Id.; Pa.R.C.P. 1061(b)(2). Ejectment, being a possessory action, can be maintained if the Appellee has a right to immediate possession with the concomitant right to demand that the Appellant vacate the land. Hill, 122 A.2d at 71. Permitting an out-of-possession Appellee to maintain an action to quiet title is impermissible because it constitutes an enlargement of the Appellee's substantive rights as defined by statute, and thus exceeds the court's jurisdiction to proceed. Sutton v. Miller, 592 A.2d 83, 88-89 (1991).

Nevertheless, appellees 'use of an incorrect form of action is not fatal to the relief granted by the trial court. Even where a plaintiff mistakenly institutes an action to quiet title instead of an action in ejectment, the appropriate remedy is to permit the Appellee to amend his or her pleadings to conform to the proper action. Sutton v. Miller, 592 A.2d at 89; see also Pa.R.C.P.

7

1033 (permitting a party to change the form of action at any time either by leave of court or with consent of the adverse party). In this case, appellees actually maintained an action in ejectment, albeit improperly in conjunction with an action to quiet title. Therefore, for purposes of the instant appeal, the Trial Court views the claims of the parties solely in the context of an action in ejectment. See Sutton v. Miller, 592 A.2d at 89 (appellate court may sua sponte amend pleadings to conform action to quiet title to proper request for ejectment.)

**II. Since the deed from Appellee to Lares Properties, LLC was a forged/fraudulent document, the deed cannot serve as a binding instrument and is wholly inoperative to transfer any right or legal title to property. Thus, the Deed from Lares Properties, LLC to Appellant is therefore invalid and the Appellee is therefore entitled to immediate possession of its property.**

### A. Forged/Fraudulent Deed

In the case at bar, Appellee claims that because the Deed from Appellee to Lares was forged and/or fraudulent, the Deed from Appellee to Lares is considered void. The Trial Court affirms this statement and further asserts that because the initial Deed was considered void, the Deed conveying the Property to Appellant is also void. To establish a common law claim of fraud, a Appellee must prove: (1) a misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded by the proximate result. Boehm v. Riversource Life Ins. Co., 117 A.3d 308 (Pa. Super. 2015) (other citations omitted).

In the alternative, Appellee also claims that the deed from Appellee to Lares was forged. Pursuant to 18 Pa.C.S. §4101, forgery is defined as: (a) Offense defined. – A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor: (1) Alters any writing of another without

8

his authority; (2) Makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or; (3) Utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection. (b) Definition. – As used in this section, the word "writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, electronic signatures and other symbols of value.

Appellee claims that it has rightful title to the Property and right to immediate possession of the Property because they have proven by clear and convincing evidence that the Lares Deed was a fraudulent/forged document. "A forged or fraudulent 'instrument is not binding on any person and is wholly inoperative to transfer any title or right to property whether the holder is an innocent or guilty purchaser.'" Kensington Citizens Committee v. Glover, 2019 WL 6716178, *1, *3 (Pa. Super. December 10, 2019); see also Harris v. Harris, 239 A.2d 783, 784 (Pa. 1968). Moreover, in Reck v. Clapp, 1 Pennyp. 339, *1, *4 (Pa. 1881), the Court concluded that a forged deed "was not merely a voidable instrument, it was void. It was called a forgery and treated as such, and neither law nor equity would tolerate it even in the hands of an innocent purchaser." Id. Where a Appellee's purported signature on a deed conveying realty to a party was forgery, a court will not deprive the Appellee of his interest in realty on the ground that the Appellant was an innocent grantee who took in good faith and had spent money in repairing a property. Williamson v. Barrett, 24 A.2d 546 (Pa. Super. 1942). 2.

In the instant case, the forgery scheme that Mr. Dean shockingly admitted to during trial is a complex one. First, Mr. Dean went to the DMV and changed his driver's license to reflect the

address of the registered office of Appellee, i.e. 415 Garrison Way, Gulph Mills, PA 19428. Thereafter, Mr. Dean and his associates, manipulated the Certificate of Organization of Appellee to substitute Mr. Dean's name and signature for that of Appellee's true members on the original document. With his name on the Articles, and an address identical to that of which appears for Appellee, Mr. Dean had defrauded himself into owner of Tugboat.

Thereafter, Mr. Dean appeared at the real estate closing pretending to be the sole member of Appellee, and signed a Deed as sole member of Appellee, transferring title from Appellee to Lares Properties. Additionally, he opened a bank account under Appellee's name at Bank of America in part under his name where the rewards of the scheme were funneled. Additionally, Mr. Dean, or his two associates, also changed Appellee's address with the post office so that Appellee would not receive notice of a Deed being filed for the Property, which occurs pursuant to Philadelphia Code §2-202. In an attempt to circumvent this statute, Mr. Jan testified that he had received a letter dated May 30, 2018 from the United States Postal Service stating that the address of Appellee has been changed. Therefore, the protections afford by the statute (the Department of Records sending notice by first-class mail to the owner within 30 days of recording of any deed), were circumvented, as Appellee did not receive notice that its' deed was transferred to a new owner. At trial, Attorney for Appellee stated that they do not know what they changed the address to. The only reason Mr. Jan knows about this change was USPS letter stating that Appellee's address had changed.

**B. Appellant Cites inapplicable case law.**

Appellant inaccurately tries to claim that because he was a subsequent bona fide purchaser for value without notice of the fraud, he should be protected and entitled to possession of the Property. This statement of the law is inapplicable to the current matter. Appellant cites the

10

following cases in support of his argument, which shows the inapplicability of the subsequent bona fide purchaser for value concept to the current matter. Carnegie Natural Gas Co. v. Braddock, 597 A.2d 285, 287 (Pa. Commonw. 1991), refers to a case that centers around the issue of whether a property owner was a bona fide purchaser of an easement when it purchased a property with an unrecorded easement that the purchaser did not know about. MacKubbin v. Rosedale Mem'l Park Inc., 257 A.2d 587, 589 (Pa. 1969): refers to a case brought by a holder of a prior equitable claim. Kepler v. Kepler, 330 Pa. 441 (1938): refers to a mortgage and holds that an innocent mortgagee for value is not bound by secret liens or equites even though the mortgagor's title was obtained by fraud. In re Fowler, 425 B.R. 157 (E.D. Pa. Bank. 2010): refers to the protections of bona fide purchasers for value without notice related to unrecorded interests.

Conversely, in Smith v. Markland, the Supreme Court of Pennsylvania held that "[n]o man can be deprived of his property by a forged deed or mortgage, no matter what may be the bona fides of the party who claims under it." 72 A. 1047, 1056 (Pa. 1909). The Commonwealth Court set forth the distinction in Kaiser Energy, Inc. v. Com., Dep't of Env't Res., 535 A.2d 1255 (1988) that it is axiomatic that a person cannot effectively convey property in which he has no ownership rights. The bona fide purchaser concept applies only to purchasers of legal title.

As demonstrated earlier in this opinion, since we have determined that the [] grantors did not possess legal title to the property which [grantors] purported to convey through a fraudulent and forged instrument, the subsequent bona fide purchaser doctrine is inapplicable to the second Deed from Lares Properties, LLC to Appellant and the overall case at bar. In other words, a subsequent bona fide purchaser without notice concept only applies to purchasers who purchase title from legal titleholders of record. The subsequent bona fide purchaser concept applies in scenarios where an owner of real property deeds a property to a buyer who does not record the

11

Deed, and the owner deeds the same property to a buyer for value who records the Deed. Here, the second buyer, who recorded the deed, is a "subsequent bona fide purchaser" because he did not have notice of the first buyer's claim and purchased the property for value. This concept, however, only applies in a title contest between two buyers of the same property, not in a case where title is obtained as a result of a fraudulent deed. In this case, Lares Properties acquired title to the Property through the fraudulent scheme executed by Mr. Dean and fellow Lares Properties, LLC associates and agents.

Due to the fraudulent acquisition of title through a forged document, Lares did not rightfully purchase rights to the Property from Appellee and therefore did not possess legal title to the Property for them to convey in a subsequent transaction. Thus, Lares Properties, LLC did not have proper legal title to convey to Appellant in the second transaction from Lares Properties, LLC to Helpful Homebuyers 2, LLC. Therefore, it is the opinion of this court that the Deed from Tugboat LLC to Lares Properties, LLC is void due to the deed being fraudulent and forged through the scheme of Mr. Dean and Lares Propperties, LLC associates and rights to immediately possess the Property rests solely with Appellee and not the Appellant since Appellee did not legally part with its rights to the Property.

## III. EQUITABLE LIEN

### A. Appellant's counterclaim for an equitable lien on the Property in the amount of $44,000, is without merit since the Appellant alleged his own loss under the contract with the contractor and failed to quantify how much Appellee was unjustly enriched through the improvements of the Property.

On June 18, 2018, Appellant entered into an agreement with a contractor, Razors Edge Construction, to perform renovation work on the Property. According to the contract, the total price for the agreed upon price was $125,000. As of May 20, 2021, the contractor performed,

12

according to Mr. Hertz, about half of the work. Additionally, as of May 20, 2021, Appellant had paid the contractor, according to Mr. Hertz, approximately $44,000 under the contract. Therefore, Appellant seeks an equitable lien in the amount of $44,000. Because Appellant only alleged its own loss as the measure of recovery, i.e. the value of labor and materials expended, and not how the Appellee had been benefitted or the increased value of the home, Appellant is not entitled to relief.

**B. Appellant cites case law that is not on point, and even if the case law were on point, it fails to show how the equitable lien should be valued at $44,000.**

Similar to the section above, the Appellant again applies inapplicable law to the instant case. First, Appellant cites Gladowski v. Felczak, 31 A.2d 718, 720 (Pa. 1943) for the proposition that "where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises." This Supreme Court quote may very well be true. However, in Gladowski, the case assured the Appellees the right of subrogation to the judgment lien of the bank and to recoup the portion of money used for restoration of the building. Those are not the facts here and, therefore, the case is not on point. In this case, the Appellant obtained title to the Property in a transaction where the grantor did not have valid title to give due to the prior fraudulent transaction between Appellee and Lares Properties, LLC. Moreover, the Appellant entered into a contract with Razors Edge Construction and used its own money to pay Razors Edge Construction for the work done on the Property. Appellant asserts no facts that indicate they had a security interest in the Property, that the Appellee acquiesced to having such work done on the Property, nor that the Appellee entered into an agreement with the Appellant where the Appellant would fund the work done to the Property. Appellant essentially funded a venture to their own detriment. Further,

13

Appellant fails to address that while an equitable lien may arise, Appellant fails to quantify the amount that equitable lien should be. In Gladowski, the Appellees "won" an equitable lien in the amount of $4,000, the remaining amount loaned from the Appellees to the owners of property for the mortgage held by Appellee's on the property for improvements and to satisfy the lien from the bank. Here, Appellant merely asserts that the money paid to the contractor is the amount the equitable lien should be. Appellant fails to demonstrate how the Appellee was benefitted from such improvements done to the property.

Next, Appellant cites Baranofsky v. Weiss, 182 A. 47, 48-49 (Pa. Super. 1935) for the proposition that an equitable lien may arise "either from a…contract which shows an intention to charge some particular property with a debt or obligation, or [may be] implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." In Baranofsky, the Appellee leased a property to the Appellant. Pursuant to the lease, the Appellant agreed to pay a $500 security deposit. A mortgage on the leased premises was foreclosed on and the lease was thereby cancelled. The Appellee brought an action of replevin for certain fixtures leased to the Appellant. The court found in favor of the Appellee in regards to the chattels, but awarded judgment in favor of the Appellant in the amount of $551, finding an equitable lien on the leased fixtures. Again, this case is not on point. The court in Baranofsky found an equitable lien in regards to certain leased fixtures, not in regards to improvements upon property. Further, the value of the equitable lien was the value of the security deposit. Therefore, even if the case was on point, the Appellant fails to reconcile to value of the equitable lien in Baranofsky and the case at hand, which was in regards to amount paid to a contractor.

14

Finally, the Appellant cites Platter v. Platter, 82 Pa. D. & C. 123 (1951) for the proposition that equitable liens have consistently been imposed where improvements and/or repairs have been made to real estate by one other than the legal owner, to prevent such legal owner's unjust enrichment. Specifically, Appellant claims that an equitable lien is appropriate "…where the improvements cannot be severed from the land and specific restitution is impossible and no constructive trust arises and yet equity requires restitution to prevent unjust enrichment." In Platter, a husband and wife were renting a property when they got a divorce. Some time later, the owner of the property deeded the property to the wife only. While the former spouses tried to add the husband to the deed, for reasons unnecessary to this disposition, he was not found to be an owner. Since the husband paid most of the real estate taxes, furnished food, and purchased furniture and in various ways expended his efforts and money, the court found an equitable lien in his favor in the amount of $1,000. Like the previous cases, the case is not on point. Unlike our present case, where a subsequent purchaser of property made improvements on property where they did not have legal title to, this case involves a husband acting under the impression he was co-owner of a property. Additionally, the court in Platter fails to mention what formula they used to arrive at the $1,000 figure. Finally, and perhaps most importantly, the case is not binding on this court, as it is a case from Somerset County, Court of Common Pleas.

## C. Taxes and Insurance

As explained previously, Appellant claims that they are entitled to a $44,000 equitable lien for the expenditures paid to the contractor. As note above, this Court does not believe this is the correct way to measure an equitable lien on the property. However, during trial, Appellant claimed that they consistently paid real estate taxes on the Property, as well as keeping the Property subject to insurance coverage. While Appellant claims they paid real estate taxes,

15

homeowner's insurance and both property and casualty insurance from their purchase of the property in 2018 to around 2020, Appellant never offered proof of such. Instead, they seek precisely $44,000, the amount they paid to Razors Edge Construction under the contract. As such, there is no way for the court to have made a determination on these alleged damages.

Appellee argues that an equitable lien is not determined by the amount paid to a contractor, but how much the value of the land has been enhanced. Conversely, Appellee claims that Appellant is not entitled to reimbursement for any work performed on the Property. This Court shares the Appellee's belief. In Nebesho v. Brown, the Superior Court held that "where a bona fide purchaser of property makes improvements and the real owner seeks equitable relief, the court 'will compel him to pay for the improvements to the extent that they have enhanced the value of the land. 'This includes payment for expenditures for insurance and for improvements necessary to maintain the property 'to the extent that they property was benefited thereby.'" Nebesho v. Brown, 846 A.2d 721, 729 (citing Stanko v. Males, 135 A.2d 392, 395 (1957). Further, our Supreme Court has found that an "appellant cannot merely allege its own loss as the measure of recovery – i.e., the value of labor and materials expended – but instead must demonstrate that appellee has in fact been benefitted." Meehan v. Cheltenham Township, 189 A.2d 593 (Pa. 1963). "Enrichment is 'measured by the value of the benefit to the owner, not by the value of the invoice submitted by the subcontractor.'" Karden Constr. Servs. v. D'Amico, 219 A.3d 619 628 (Pa. Super. 2019) (citing Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania, 7 A.3d 278, 283 (Pa Super. 2010)). First, as demonstrated above, Appellant does not fall into the category of a subsequent bona fide purchaser. Appellant did not purchase the Property from the true owner for value. Appellant purchased the Property from Lares Properties, LLC who illegally obtained title to the Property through a forged and fraudulent deed from the

16

Appellee. In this matter, the Appellant is not entitled to its equitable lien, as the Appellant failed to demonstrate how Appellant enhanced the value of the land. Appellant claims that Appellant's mistake comes from their reliance solely on the amount paid to the contractor, and not showing how the amount paid to the contractor enhanced the value of the land.

## IV. EVIDENTIARY ERRORS

A. **The Trial Court did not err and abuse its discretion with the admission of certain pieces of evidence during trial since those pieces of evidence were relevant and probative to prove elements as well as facts necessary to the Appellee's cause of action and that the record does not support a finding that such evidence of Mr. Dean's criminal background was admitted during trial.**

Lastly, Appellant argues that the court erred and abused its discretion thus causing undue prejudice to the Appellant when it admitted certain pieces of evidence during the bench trial. This opinion will address these evidentiary concerns in turn.

Under Pennsylvania Law, relevant evidence is broadly defined. Under Pa.R.E §401, evidence is relevant if: a) it has the tendency to make a fact more or less probable than it would without the evidence, and b) the fact is of consequence in determining the action. See also Commonwealth v. Spiewak, 533 Pa. 1, 617 A.2d 696, 699 (1992). Under Pa.R.E §402, all relevant evidence is admissible except as provided by law. It is well established by Pennsylvania law that "admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." See Commonwealth v. Weakley, 972 .2d 1182 (Pa. Super. Ct. 2009) quoting Commonwealth v. Reid, 571 Pa.1, 811 A.2d 530, 550 (2002). In this instance, the Appellant argues that the admission of testimonial and/or documentary evidence of the Appellee's purported agreement of sale for the subject premises, the Appellants title issuer, real estate other than the subject premises, and the documentation allegedly from Bank of America, caused the

Appellant undue prejudice. This Court is of the belief that the Court did not err and abuse its discretion and such evidence was properly admitted during trial.

First, as it pertains to the agreement of sale allegedly made by the Appellee and the documentation from Bank of America, the admission of such agreement and documentation was warranted to determine the probability of facts necessary to support the claim of fraud made by the Appellee. In this case, the Appellee asserted a claim of fraud claiming that the Deed evidencing the transaction between Appellee and Lares Properties, LLC was forged and fraudulent and therefore void. When raising such a claim, the burden was on the Appellee to prove the elements of both Fraud and Forgery, both stated in this opinion above, on a preponderance of the evidence standard. Admission of the agreement as well as the documentation from Bank of America was warranted to prove crucial steps of the fraudulent scheme Mr. Dean and Lares Properties, LLC used to defraud the Appellee out of rightful possession of the Property. The admission of such evidence showed that Mr. Dean forged his name on the documents indicating he was acting as an agent of the Appellee and was authorized to make such a transaction as the sole representative of Appellee. Moreover, the evidence further helped this Court determine that Mr. Dean and Lares Properties, LLC together facilitated the sale of the Property to Lares Properties, LLC and received wire proceeds from the transaction at a Bank of America account. This evidence was crucial to help prove that more likely than not the Appellee's claim of fraud had merit and helped prove more likely than not that such elements to the Appellee's claim were met.

Similarly, the admission of testimony or documentary evidence of the Appellants title issuer was warranted as well. During trial, Appellant's witness on cross-examination was asked who they contacted after they found out about Appellee's lawsuit. This line of questioning was

18

used to determine if the Appellant witness discovered any issues with title to the Property prior to the second transaction. Moreover, the evidence was deemed relevant in determining the proper chain of title to the Property as well as if Appellant had rightful possession to the Property as a subsequent bona fide purchaser. Further, the evidence was also admitted to determine if Appellant had notice of the prior fraudulent transaction between Appellee and Lares Properties, LLC.

Appellant also argues that the testimony of Appellant witness, Mr. Hertz, violated the Pennsylvania Rules of Evidence and prejudiced the Appellant. On cross-examination, witness Mr. Hertz gave testimony in regards to previous properties of Appellant and Appellant's sister companies. Appellant objected to such testimony regarding the other properties claiming such evidence was irrelevant and this Court overruled such objections. The Court maintains the position that such testimony as it pertains to the other properties was relevant and was properly admitted. During trial, witness Mr. Hertz testified to his duties as it pertains to his real estate investing companies. Mr. Hertz asserted that he was the managing partner of Helpful Homebuyers 2 and that he had duties that ranged from buying properties, being in charge of renovating the properties, and managing the business's financial records.

On cross examination, Appellee's counsel inquired about other properties that Appellant had purchased. After Appellant counsel objected claiming the testimonial evidence was irrelevant, this Court overruled the objection. Such testimonial evidence was deemed relevant by this Court because such testimony allowed the Court to clarify the nature of the business of Helpful Homebuyers 2 and the process the Appellant utilizes when purchasing and renovating a property and if Appellant treated the Property in question similarly to the properties they purchased in the past.

19

Lastly, under Pa.R.E §404(b)(1), evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Under Pa.R.E §404(b)(2), evidence of any other crime, wrong, or act may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. As it pertains to the admission of testimonial or documentary evidence of Mr. Dean's prior bad or criminal acts, the record does not show a finding that such evidence was admitted during trial. Appellant, during direct examination of the Appellee witness, Mr. Jan, objected to the testimony regarding an investigation done by the witness into the background of Mr. Dean. These objections were sustained by this Court and such testimony was not given due to such evidence being declared inadmissible hearsay. Se Pa.R.E §801 and §802. Moreover, this court struck the characterization made by counsel of Appellee labeling the acts of Mr. Dean a heinous crime. Further, this court advised both parties that evidence regarding the witness's criminal background was not relevant in the instant matter and that evidence of crimen falsi may be relevant and admitted if properly presented during trial.

Here, no such evidence of crimen falsi was offered bv either party. The record shows that Mr. Dean at the time of trial had a complaint filed against him, however, no action was taken on the complaint by the Police or the District Attorneys office. Therefore, Mr. Dean was not formally charged with a crime as it related to this matter. Given, Mr. Deans involvement in the matter, the nature of his testimony, and this Court being unaware of the rights, if any, provided to Mr. Dean during Mr. Dean's deposition and before trial, Mr. Dean was advised by this Court that he had a right to raise his Fifth Amendment rights to prevent him from incriminating himself during trial. Further, this Court also advised Mr. Dean that he had the right to seek counsel and

20

instructed Appellate to assist Mr. Dean in locating affordable resources to help Mr. Dean retain counsel. After this Court advised Mr. Dean of his rights, Mr. Dean decided on his own merits to waive the rights he was advised of and proceeded to testify without representation and without asserting his Fifth Amendment rights. Further, assuming arguendo that such evidence was erroneously entered into evidence, the admission was harmless error and did not influence the proceedings or this Honorable Courts decision in any way. Given that the record shows no evidence of Mr. Dean's criminal background being admitted during trial and Mr. Dean being advised of his rights before testifying in order to prevent self-incrimination, this Court did not err.

## CONCLUSION

In conclusion, for the above stated reasons, the Appellee is entitled to immediate possession of the Property because the Deed conveying such property was a fraudulent and forged document and the Appellants claim of an equitable lien is without merit for the Appellee failed to quantify the amount of the lien as well as show how the Appellee is unjustly enriched rather than the Appellant alleging his own loss.

BY THE COURT:

_____
SEAN F. KENNEDY, J.

21